UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANITA ERICKSON,<br><br>                    Plaintiff,<br>v.<br><br>BIOGEN, INC., a Delaware corporation,<br><br>                    Defendant. | NO.<br><br>COMPLAINT FOR DAMAGES<br><br><u>**JURY TRIAL REQUESTED**</u> |

Plaintiff alleges:

## I.   JURISDICTION

1.1   This Complaint asserts claims of discrimination and retaliation based on 42. U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. 626(e), and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101-02, as well as claims of unlawful retaliation in violation of the False Claims Act 31 U.S.C. § 3729, 3730, and Jurisdiction is conferred on this court by 28 U.S.C. § 1331.

1.2   This Complaint also asserts state law claims for discrimination and retaliation in violation of RCW Chapter 49.60, as well as state law claims of wrongful termination in violation of public policy over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

COMPLAINT AND JURY DEMAND - 1
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

## II.  PARTIES

2.1  Plaintiff Danita Erickson resides in Tacoma, Washington and performed her work for Defendant throughout her South Sound/Seattle and Alaska sales territory, which included portions of Seattle and the South Sound in Washington State and the State of Alaska.

2.2  Defendant Biogen, Inc. ("Biogen") is a Delaware corporation, with its principal place of business in Cambridge, Massachusetts.  Defendant Biogen does business throughout the United States, including the States of Washington and Alaska where Plaintiff worked.

2.3  Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 where Defendant does business and where a substantial part of the events or omissions giving rise to this claim occurred.

## III.  STATEMENT OF FACTS

3.1  Defendant Biogen is a biotechnology company based in Cambridge, Massachusetts that develops, manufactures and sells therapeutics, with most of its core products addressing the treatment of Multiple Sclerosis ("MS").

3.2  One of the drugs Biogen marketed for the treatment of MS was Zinbryta.

3.3  Defendant Biogen employs over 7,000 employees.

3.4  Ms. Erickson is female and is over the age of 40.  She has a Bachelor's of Science degree and has been employed in the pharmaceutical field since 1996. She began working for Defendant Biogen in Washington as a Senior Territorial Business Manager or "Senior TBM" in May 2011.

3.5  Ms. Erickson's compensation with Biogen included a base salary, along with target incentive bonuses, which she met or exceeded in 2017 and in the first quarter of 2018.

COMPLAINT AND JURY DEMAND - 2
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.6     At all times material to this Complaint, Biogen employed Plaintiff as a Senior TBM.  Plaintiff called on neurology practices in Seattle and the South Sound in Washington, as well as in Alaska, with the responsibility of selling Biogen therapeutics to neurology practices that treat patients with MS.

3.7     Ms. Erickson consistently met or exceeded expectations throughout her employment with Defendant, receiving positive annual performance reviews with ratings of "Solid (2,2)" or "Exceptional (3,2)" every year, including her year-end 2017 review when she again received a "Solid (2,2)" rating.

3.8     Ms. Erickson also participated in Biogen's Restrictive Stock Unit or "RSU" program where she was awarded shares in the company as a retention bonus that would vest over time.

3.9     At all times relevant in 2017 and 2018, Ms. Erickson reported to Biogen Regional Sales Director Mary Brown who is based in Bozeman, Montana.

3.10    On September 5, 2017, Ms. Erickson was on a business trip to Alaska accompanied by her supervisor, Mary Brown.

3.11    During that trip Ms. Erickson suffered a severe and debilitating migraine headache requiring her to reschedule some appointments.

3.12    Ms. Erickson completed her Alaska sales calls and returned to Seattle on September 6, 2017 without incident.

3.13    Following her observations on this trip of Ms. Erickson's migraines, Ms. Brown became focused on Ms. Erickson's migraine issues.

3.14    Just a few days later, on September 8, 2017, another TBM, Sarah Lenoue, was attending a work related MS Bike event also attended by Mary Brown and another TBM Jim Lykins.  Ms. Lenoue overheard Mary Brown discussing Ms. Erickson's migraines with Mr. Lykins and told Ms. Erickson about these comments.

COMPLAINT AND JURY DEMAND - 3
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.15   Ms. Erickson was upset and concerned that her boss was discussing her confidential medical information with her colleague.

3.16   Ms. Erickson spoke directly to Mr. Lykins, asking him to refrain from discussing her personal medical information.  Mr. Lykins then explained that Brown initiated the discussion and queried him for details as to whether Ms. Erickson had previously had migraines and how many per month.

3.17   On September 13, 2017, Brown approached Ms. Erickson at a Region meeting and continued to ask about her migraines.

3.18   Ms. Erickson's migraine condition is a disability in that it is a sensory, mental, or physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) was perceived to exist whether or not it existed in fact.

3.19   In addition, Ms. Erickson's migraine headaches can substantially limit one or more of her major life activities – Brown perceived that they were a substantially limiting factor on Ms. Erickson's ability to perform her job duties including travel.

3.20   Ms. Erickson felt threatened and singled out.  Her migraines had not prevented her from performing her job duties, she traveled to Alaska twice a month for work, her evaluations and performance met all expectations and this was little more than a unexpected health episode – but it happened to occur in the presence of her boss who did not like it one bit and expressed disapproval of Ms. Erickson as a suitable TBM once she observed the impact of her migraine condition during a business trip.

3.21   Around this same time Ms. Erickson also became concerned with efforts of her fellow TBM, Jim Lykins, to support marketing of Zinbryta for an off-label use and submitting paperwork for a Medicare patient with falsified diagnostic codes, which she reasonably believed was fraudulent and in violation of the False Claims Act ("FCA").

COMPLAINT AND JURY DEMAND - 4
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.22   The drug in question, Zinbryta, had been approved by the FDA only for use with relapsing Multiple Sclerosis patients. According to the FDA, it "should generally be used only in patients who have had an inadequate response to *two or more MS drugs* because Zinbryta has *serious safety risks, including liver injury and immune conditions*.[1] The package insert warns: "ZINBRYTA is an interleukin-2 receptor blocking antibody indicated for the treatment of adult patients with relapsing forms of multiple sclerosis (MS). Because of its safety profile, the use of ZINBRYTA should generally be reserved for patients who have had an inadequate response to two or more drugs indicated for the treatment of MS." The drug has an FDA "Black Box" warning reserved for drugs with the most severe and potentially life threatening side effects.

3.23   Zinbryta is rarely prescribed, so Ms. Erickson's territory sales goal was one sale per quarter.

3.24   At some point, Ms. Erickson's co-TBM, Jim Lykins, learned that an Olympia hematologist was prescribing Zinbryta for an aplastic anemia Medicare patient.  In a meeting with Mary Brown and Ms. Erickson, Mr. Lykins raised the idea of getting involved in the prescription – seeking to get credit for the "sale" of this drug.

3.25   Ms. Erickson spoke up, opposing this action voicing her belief that getting involved in marketing and seeking a commission for an off-label use of a drug with a false diagnosis code for a Medicare patient was a violation of federal law as well as a violation of Biogen's Code of Ethics.

3.26   Mary Brown disagreed, and approved Mr. Lykins going to a hematologist (who does not treat MS patients) to get a Zinbryta patient form completed.  This would

---

[1] Around the time it terminated Ms. Erickson, in March 2018 Biogen pulled Zinbryta from the market, apparently due to the European Medicines Agency's initiation of an Article 20 referral following reports of inflammatory encephalitis and meningoencephalitis in users.

COMPLAINT AND JURY DEMAND - 5
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

allow him to get credit for the sale, (meeting the territory sales goal and earning commission and bonus for this off-label use).

3.27   The Biogen Zinbryta form included the following certification to be signed by the prescribing physician under oath:

> I authorize Biogen as my dedicated agent and on behalf of my patient to (1) forward the above statement of medical necessity and furnish any information on this form to the insurer of the above-named patient and (2) forward the above prescription . . . to the pharmacy chosen by the above-named patient. **I certify that the rationale for prescribing ZINBYTRA therapy is for a primary diagnosis of ICD-9:340/ICD-10:G35**, and I will be supervising the patient's treatment accordingly.

(Emphasis added).  The ICD diagnosis codes referenced in the form are for "multiple sclerosis", not aplastic anemia.

3.28   Following this discussion, Biogen Case Manager Emelia Hooper sent an email on September 17, 2017, to Ms. Erickson and Mr. Lykins regarding a call she had received regarding the off-label use of Zinbryta for a patient not diagnosed with MS.

3.29   The next day Mr. Lykins invited Ms. Erickson to go with him to call on the hematologist who was prescribing Zinbryta for an aplastic anemia patient who was a Medicare recipient.  Ms. Erickson again protested this improper marketing and promotion of Zinbryta for an off-label use and declined to accompany Mr. Lykins on the sales call.

3.30   Recipients of Zinbryta had to participate in the REMS program, which provided support and monitoring at Biogen's expense to track these patients for liver damage and related serious known side effects. A prescribing physician must be REMS certified, but is not required to use Biogen's prescription form in an off-label scenario.

3.31   The deliberate intent and sole purpose of having the Hematologist complete the Biogen prescription form was so that a sales credit and commission would

COMPLAINT AND JURY DEMAND - 6
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

be earned with the false representation that this was for use with a Medicare patient diagnosed with MS, not an off-label use for aplastic anemia.

3.32   Mr. Lykins' plan to use the Zinbryta Start Form enrollment form for this aplastic anemia Medicare patient would result in submitting false diagnosis codes so he could get credit for the sale.

3.33   On September 21, 2017, Ms. Hooper notified the team by email that she had faxed the Zinbryta Start Form to the prescribing hematologist's office as Mr. Lykins requested.

3.34   On September 22, 2017, Mary Brown again spoke to Ms. Erickson by phone about her migraines. Brown told her she should look for a different job (with no flying) due to the fact that flying was a possible trigger for Ms. Erickson's migraines. Brown also told Ms. Erickson she would be following up with her about her migraines.

3.35   Ms. Erickson had been flying to Alaska routinely for years as part of her job, was successful in her sales there and had no reason to believe her disability was preventing her from performing her job duties, although Brown clearly expressed that she believed Ms. Erickson could not continue to work as a TBM.

3.36   On October 10, 2017, Brown was in the field with Ms. Erickson for a ride along in the Olympia area. Brown told Ms. Erickson she was glad to hear about the Zinbryta patient from the Hematologist. Ms. Erickson told Brown that she believed that pursuing a Zinbryta Start Form for this aplastic anemia patient was a direct violation of corporate ethics and compliance policies and was improper marketing of Zinbryta because promotion of off-label usage was strictly forbidden by Biogen. Ms. Erickson reminded Brown that, as a manager, she should not be encouraging Mr. Lykins to get a Zinbryta Start Form for the off-label use of the drug with a false diagnosis for the

COMPLAINT AND JURY DEMAND - 7
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

Medicare patient (representing it was being prescribed for MS) and told her directly, "You need to put a stop to this."

3.37   On October 20, 2017, Brown again raised the migraine issue with Ms. Erickson in a phone call, quizzing her about the impact her job was having on this condition and asking if other migraines had occurred. Ms. Erickson had reported no migraines and objected to her manager continuing to instigate long discussions about her health condition and Brown's perceptions that this disability limited Ms. Erickson's ability to work.

3.38   November 5-7, 2017, there was a Biogen meeting in Chicago. Ms. Erickson arrived the day before the meeting began (as did Katie Barth and Brad Pankella -- two other colleagues from her region). No "pre-approval" was required. For west coast attendees heading east, with flight schedules and the time change, it was routine to fly in the day before a meeting would begin so that they would be on time for the meeting's start.

3.39   On November 17, 2017, there was a Region dinner in SeaTac to introduce Biogen's new General Manager, Zac Allison.  Mary Brown, Sarah Lenoue, Matt Chapman, Steve Esola, Jim Lykins, Zac Allison, Angeline Crowles, and Danita Erickson were all present.  During the dinner, Mr. Lykins boasted about obtaining Zinbryta Start Form for an aplastic anemia patient, touting how he had obtained credit for the off-label use by submitting a form requiring a MS diagnosis code. Brown said nothing, so Ms. Erickson said, "This is wrong."  Sarah Lenoue then explained to Zac Allison that Zinbryta is approved for MS and this was for an off-label use.  Nothing was done to address this improper action.

3.40   Around this same time a flurry of emails and text messages document Mr. Lykins' efforts to get the Zinbryta Start Form completed for the Medicare patient with

COMPLAINT AND JURY DEMAND - 8
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

aplastic anemia. On December 4, 2017, Mary Brown sent an email to the entire Northwest Region boasting about Tacoma meeting its Zinbryta quota (not mentioning this was achieved by obtaining false documentation for an off-label use with a false diagnosis code).

3.41  In early December 2017, Ms. Erickson called the Biogen Corporate Integrity Hotline to make a report about this fraudulent promotion of off-label use of Zinbryta for a Medicare patient that she believed to be in violation of federal law and Biogen's own ethics policies.

3.42  This initial report was made through "Ethics Point", but the following week Ms. Erickson was contacted by Biogen Litigation counsel Dan Curto who asked for some time to follow up.

3.43  On December 11, 2017, Mr. Lykins texted "we have ZIN patient", which meant that the Zinbryta Start Form prescription had been submitted and filed with patient services.

3.44  That same day, Mr. Curto called Ms. Erickson to ask further about her concerns and, after explaining the issues about false forms and off-label promotion, Ms. Erickson stated that she was very concerned about retaliation.

3.45  Because of her fears about retaliation, Ms. Erickson emailed Mr. Curto on December 13 to ask if she should also notify Biogen Human Resources about these issues and repeated her retaliation concerns. Mr. Curto responded that same day telling her that she had reported it to the right place and she did not need to further report.

3.46  Ashfield Nursing is a Biogen contractor who provides training and support for patients prescribed various MS drugs, including Zinbryta.

3.47  Around the same time, Ashfield Nurse Susan Hajek reported the same concern about this off-label Zinbryta prescription through internal channels at Ashfield.

COMPLAINT AND JURY DEMAND - 9
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.48 Hajek's superiors contacted Biogen Patient Services Director Jody Palmer, and informed him that Ashfield had received a nursing injection training request for an aplastic anemia patient for injection training.

3.49 Between Ashfield, Palmer and Curto's calls, Brown learned there had been a formal complaint by Ms. Erickson (who had directly voiced her opposition to Brown previously).

3.50 Around this time, Brown began escalating her retaliatory actions against Ms. Erickson.

3.51 One example was that Ms. Brown cut Ms. Erickson off from calls, emails and ride alongs. There was a substantial decrease in communications from Ms. Brown to Ms. Erickson compared to previous weeks and months.

3.52 Contact and communications from Mr. Lykins similarly made a sharp decline.

3.53 The sharp decline in communication was sufficiently concerning that Ms. Erickson notified Mr. Curto about the retaliation by email on January 2, 2018.

3.54 Mr. Curto responded by email noting his investigation had been delayed due to Biogen's holiday shutdown.  Ms. Erickson then called Mr. Curto to ensure he understood that she was being shut out by both Brown and Lykins.  She emailed him again on January 5 to again report these retaliatory actions.

3.55 From December 15, 2017 – January 8, 2018 there was no text or phone communication between Mary Brown and Danita Erickson.

3.56 There was a Biogen meeting in New Orleans January 8-11.  Ms. Erickson attended all required events, but only briefly attended the optional welcome reception.

3.57 Brown's first text to Ms. Erickson – on January 8 – was a veiled threat.  "I didn't see you at the Welcome Reception".

COMPLAINT AND JURY DEMAND - 10
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.58    During the rest of the meeting Mary Brown overtly avoided speaking or interacting with Ms. Erickson.

3.59    The following week, on January 15, 2018, Brown emailed Ms. Erickson, Ms. Lenoue and Matt Chapman, informing them that they would have a STEM compliance field visit in January.

3.60    Lenoue and Chapman had also told Brown and Lykins that they did not believe it was appropriate to use a Zinbryta Start Form representing an existing MS diagnosis for an off-label aplastic anemia patient.

3.61    This short notice STEM ride along was another retaliatory adverse action. Having less than a week to secure appointments with customers is extremely difficult, which is why it is negative to have a short lead time for a ride along, especially a STEM ride along audit.

3.62    Ms. Erickson reported this additional retaliatory action to Mr. Curto as well.

3.63    At this point, becoming increasingly concerned about ongoing and escalating retaliation, Ms. Erickson reached out to Biogen Human Resources representative Keri Palacio on January 19, 2018 to report her concerns.

3.64    The same day, Mr. Curto notified Ms. Erickson that his investigation into the off-label Zinbryta promotion that she reported was now closed.

3.65    On January 25, 2018, Ms. Erickson spoke with Ms. Palacio to inform Biogen's Human Resources about the numerous comments from Brown regarding her migraines, as well as the ethics report she made, and Brown's subsequent retaliatory actions.

3.66    Ms. Palacio said she would look into it and Ms. Erickson forwarded her the ethics complaint from December 6, 2017.

COMPLAINT AND JURY DEMAND - 11
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.67   There was no further follow up from Human Resources. Ms. Erickson had no idea what was being done, if anything, to address the concerns she had about Brown's ongoing discriminatory and retaliatory actions.

3.68   Brown continued these actions, questioning Ms. Erickson's previously approved expense report for the New Orleans business conference she attended. Erickson had arrived the night before the conference began due to travel time and flights from the West coast. Brown instructed Erickson to get any such arrivals pre-approved in the future.

3.69   Another West coast attendee, Brad Pankalla, also arrived early but did not receive an email from Brown ordering him to have his future arrival times pre-approved in advance. Mr. Pankalla was a male, he had not opposed conduct he believed to violate the False Claims Act, had not complained about discrimination or retaliation and he did not suffer from any disability.

3.70   On February 5, 2018, Brown suddenly scheduled a ride-along trip with Ms. Erickson for February 14-15 (these events are usually scheduled a month in advance).

3.71   Brown then cancelled the ride along and scheduled Ms. Erickson for a meeting on February 15, 2018 in Tacoma to conduct Ms. Erickson's annual review.

3.72   Ms. Erickson received a "Solid 2.2" rating, of meeting expectations in all areas in her annual review.

3.73   Following her complaints to Brown, EthicsPoint, Corporate Counsel, and Human Resources, Plaintiff was subjected to adverse actions by Brown and others in retaliation for her protected activity, and within a few months Plaintiff was terminated.

3.74   On March 19, 2018, Brown texted Ms. Erickson asking to schedule a call the next morning. Because this was an unusual request and she was traveling to Alaska

COMPLAINT AND JURY DEMAND - 12
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

the next day, Ms. Erickson asked if she should take the call from home. Brown told her to take the call from home, which entailed cancelling her Alaska trip.

3.75  The following day, Ms. Erickson had a teleconference with Mary Brown and Keri Palacio (the same Human resources person to whom she had reported concerns about discrimination and retaliation eight weeks earlier).

3.76  Brown and Palacio told Erickson her position was being eliminated as part of a "restructuring" and she would be terminated on April 3, 2018. She was also told that under no circumstances was she allowed to speak with others who were being let go or discuss the terms of the proposed separation agreement that she was later presented with.

3.77  The separation agreement, among other things, required Ms. Erickson to release all claims for discrimination, retaliation or wrongful termination in violation of public policy, as well as falsely affirm, "you have not been retaliated against for reporting any allegations of wrongdoing by the Company or its officers, including without limitation, any allegations of corporate fraud."

3.78  Biogen chose to retain less qualified or less experienced male employees who were younger, who had no disabilities, and who took over her duties and who had not engaged in protected activity complained about discrimination or retaliation.

3.79  A younger male employee without a disability was assigned Ms. Erickson's job duties following her termination. He had not engaged in protected activities.

3.80  Similarly, her male counterpart, Jim Lykins, who was the "Co-TBM" for her territory (who did not suffer migraines and was willing to support off-label promotion of Zinbryta) and had not engaged in protected activities was also retained.

3.81  Biogen discriminated against Ms. Erickson in the terms and conditions of her employment.

COMPLAINT AND JURY DEMAND - 13
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

3.82   This discrimination was a substantial and/or motivating factor in Ms. Erickson's termination.

3.83   Ms. Erickson opposed this discriminatory conduct and engaged in protected activity under state and federal law.

3.84   Ms. Erickson suffered retaliatory adverse actions that would dissuade a reasonable person from oppose such discriminatory conduct.

3.85   Ms. Erickson's protected activity was a substantial or motivating factor in her termination.

3.86   As a result of Biogen's wrongful, illegal, discriminatory and/or retaliatory actions, Ms. Erickson has suffered both general and special damages, including lost wages, benefits, restricted stock units, emotional distress, and humiliation.

## IV.   FIRST CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION – TITLE VII, ADEA, and ADA

4.1.   Biogen's willful and unlawful conduct described herein discriminated against Ms. Erickson based upon her disability, age and/or gender in violation of federal law.

4.2.   Ms. Erickson engaged in protective activity and Biogen retaliated against her for such activities in violation of federal law.

4.3.   Biogen's actions constituted discrimination and retaliation against Ms. Erickson in violation of federal law including 42. U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. 626(e), and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101-02.

4.4.   Ms. Erickson filed a charge of discrimination with the EEOC in June 2018. The EEOC issued Ms. Erickson a "Right to Sue" letter on June 29, 2018.

COMPLAINT AND JURY DEMAND - 14
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

4.5. Under Title VII, the ADEA and the ADA, Ms. Erickson is entitled to recover actual and compensatory, economic and non-economic, special and general damages, liquidated damages, punitive damages, as well as attorneys' fees and litigation expenses and an enhanced award to offset any negative tax consequences.

## V. SECOND CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION – RCW 49.60

5.1 Biogen's conduct described herein constitutes illegal discrimination against Ms. Erickson based upon her disability, age and/or gender in violation of Washington's Law Against Discrimination, RCW 49.60 et seq.

5.2 Biogen's conduct described herein constitutes illegal retaliation against Ms. Erickson in violation of Washington's Law Against Discrimination, RCW 49.60.210.

5.3 Under Washington's Law Against Discrimination, Ms. Erickson is entitled to recover all actual and compensatory, economic and non-economic, special and general damages, as well as attorneys' fees and litigation expenses and an enhanced award to offset any negative tax consequences.

## VI. THIRD CAUSE OF ACTION
## FALSE CLAIMS ACT (31 U.S.C. §§ 3729, 3730)

6.1 The False Claims Act ("FCA") prohibits retaliation against an employee who engages in protected activity by bringing forward complaints that the employee reasonably believes to be regarding acts in violation of the FCA.

6.2 Under federal law, off-label uses of prescription drugs that are not medically accepted cannot be paid by Medicare. 42 U.S.C. § 1396r-8(k)(3) (stating that covered outpatient drugs do not include drugs that are "used for a medical indication which is not a medically accepted indication"); 42 U.S.C. § 1396r-8(k)(6) (stating that a

COMPLAINT AND JURY DEMAND - 15
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

medically accepted indication includes a use "which is approved under the Federal Food Drug and Cosmetic Act" or which is included in drug compendia). Unless a particular off-label use for a drug is approved by the FDA, a prescription for the off-label use of that drug is not eligible for reimbursement under Medicaid.

6.3   Ms. Erickson reasonably and in good faith believed that Mr. Lykins' distribution of a preprinted Zinbryta form with MS diagnoses codes to a physician using the product off-label with a Medicare patient in an effort to obtain commissions was a violation of the FCA.

6.4   Ms. Erickson reasonably believed that her internal complaints about off-label promotion and sales for off-label use of Zinbryta with a Medicare recipient were necessarily complaints about potentially fraudulent claims to the government, and were protected conduct under the FCA.  Her colleague was offering the physician, who was prescribing Zinbryta for off-label use, support and seeking a commission for a sale he should properly not be promoting. The drug was so unsafe and rarely prescribed that her colleague, in order to meet the sales quota, was willing to resort to fraudulent practices and Ms. Erickson expressly raised her concerns about this fraudulent practice with her regional manager, ethics point, corporate counsel and human resources.

6.5   Ms. Erickson took steps to prevent false claims from being submitted through the Medicare program.

6.6   Ms. Erickson's conduct described herein was activity protected under the FCA.

6.7   Defendant Biogen knew that Ms. Erickson engaged in activity protected by the FCA.

COMPLAINT AND JURY DEMAND - 16
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

6.8     Biogen's adverse actions described herein leading up to and including her wrongful termination, were motivated in part by her protected activity and were in violation of the FCA.

6.9     Biogen's wrongful actions in violation of the FCA were a proximate cause of damage to Ms. Erickson, including past wage loss and benefits, future wage loss and benefits, restricted stock units, emotional distress, as well as attorneys' fees and litigation expenses and other damages to be proven at trial.

6.10    By these actions, Defendant Biogen violated 31 U.S.C. § 3730(h).

## VII.    FOURTH CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

7.1     Defendant Biogen owed Ms. Erickson not to discharge her if the discharge would contravene a clear mandate of public policy.

7.2     A wrongful termination in violation of public policy occurs when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct.

7.3     Ms. Erickson engaged in protected activity under Washington law when she refused to condone and internally reported what she perceived to be fraud in submitting forms with false MS diagnosis codes to support and promote off-label use of Zinbryta and to potentially obtain Medicare payments and commissions for that off-label use.

COMPLAINT AND JURY DEMAND - 17
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

7.4     The conduct that Ms. Erickson refused to engage in and that she protested constituted an unfair and deceptive trade practice in violation of Washington's Consumer Protection Act, RCW 19.86.020.

7.5     Ms. Erickson's protected activity, reporting what she reasonably believed to be fraudulent activity and misconduct by Biogen employees who were promoting off-label use of Zinbryta in a Medicare patient and soliciting the physician to submit a form providing false diagnosis code in violation of federal and state law was a substantial factor in Biogen's decision to terminate her employment.

7.6     Biogen's retaliatory termination of Ms. Erickson following her protected reporting of improper promotion of off-label use of Zinbryta was in violation of public policy.

7.7     Biogen's wrongful actions in violation of public policy were a proximate cause of damage to Ms. Erickson, including past wage loss and benefits, future wage loss and benefits, restricted stock units, emotional distress, as well as attorneys' fees and litigation expenses and other damages to be proven at trial

### PRAYER FOR RELIEF AND JURY DEMAND

Plaintiff Danita Erickson asks the Court for the following relief:

A.     For judgment against Defendant Biogen for all actual and compensatory, economic and non-economic, general and special damages as allowed by law;

B.     For all punitive, liquidated damages and double damages as allowed by law;

C.     For all costs, expenses of litigation, interest, and reasonable attorneys' fees as allowed by law;

COMPLAINT AND JURY DEMAND - 18
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

D.    For an enhanced award for federal tax consequences to make her whole;

E.    For trial by jury; and

F.    For such other relief as the court deems just and equitable.

DATED this 13th day of July, 2018.

                GORDON THOMAS HONEYWELL LLP

                By: /s/ *Stephanie Bloomfield*
                    Stephanie Bloomfield, WSBA No. 24251
                    sbloomfield@gth-law.com
                By: /s/ *James W. Beck*
                    James W. Beck, WSBA No. 34208
                    jbeck@gth-law.com
                ATTORNEYS FOR PLAINTIFF

COMPLAINT AND JURY DEMAND - 19
[4822-9594-9419]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565