THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANITA ERICKSON, | CASE NO. C18-1029-JCC |
| Plaintiff, | ORDER |
| v. | |
| BIOGEN, INC., | |
| Defendant. | |

This matter comes before the Court on the parties' joint submission filed pursuant to W.D. Wash. Local Civ. R. 37(b) (Dkt. No. 16). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion in part and DENIES the motion in part, for the reasons explained herein.

## I. BACKGROUND

Plaintiff Danita Erickson was formerly employed as a Senior Territorial Business Manager ("TBM") for Defendant Biogen, Inc.'s Pacific Northwest region. (Dkt. No. 1 at 3.) As a TBM, Plaintiff contacted neurology practices in Washington and Alaska in order to sell Biogen therapeutics. (*Id*.) On September 5, 2017, while on a business trip to Alaska, Plaintiff suffered a severe migraine, causing her to reschedule multiple business appointments. (*Id*.) Accompanying her on this trip was Mary Brown, Regional Sales Director for the Pacific Northwest region and Plaintiff's supervisor. (*Id*.) Plaintiff alleges that Ms. Brown observed the effects of Plaintiff's

migraine, and shortly thereafter began inquiring about Plaintiff's migraine frequency, severity, and effect on Plaintiff's work to both Plaintiff and her colleagues. (*Id*. at 3–4.)

Shortly after her sales trip to Alaska, Plaintiff became concerned with TBM Jim Lykins's marketing of Defendant's therapeutic drug Zinbryta. (*Id*. at 4.) Zinbryta has been approved by the Food and Drug Administration ("FDA") in a limited capacity—only to treat multiple sclerosis ("MS") patients who had an inadequate response to other treatments. (*Id*.) Plaintiff alleges that Mr. Lykins, with approval from Ms. Brown, marketed Zinbryta to a non-MS patient in order for Defendant to receive credit for the prescription. (*Id.* at 5.) Plaintiff further alleges that Mr. Lykins falsified International Classification of Disease ("ICD") codes in the non-MS patient's file in order to show the patient was receiving Zinbryta to treat MS, when in fact the patient suffered from an entirely different disease. (*Id*. at 6.) Plaintiff alleges that this practice violates the False Claims Act ("FCA"), 31 U.S.C § 3729. (*Id.* at 15.)

In early December 2017, Plaintiff reported to Defendant that this practice violates the FCA. (*Id.* at 9.) Several days later, she was contacted by Defendant's litigation counsel, Dan Curto. (*Id*.) Mr. Curto asked Plaintiff for additional details about the alleged violation. (*Id*.) Plaintiff states that, during the conversation, she repeatedly expressed her concerns about retaliation. (*Id*.) In the months following her conversation with Mr. Curto, Plaintiff reported to Mr. Curto and Defendant's Human Resources Officer Keri Palacio that she was retaliated against several times, including being ignored by Ms. Brown and other TBMs, and being forced to undergo "ride-along" evaluations on short notice.[1] (*Id.* at 10–11.)

In early 2018, Defendant underwent a restructuring of its organization. (Dkt. No. 20 at 2.) As part of that restructuring, one TBM position in the Pacific Northwest region needed to be eliminated (the "RIF process"). (Dkt. No. 19 at 2.) Ms. Brown and Zachary Allison, General Manager of Defendant's Western division, were responsible for deciding who to terminate. (*Id*.)

---

[1] According to Plaintiff, it is difficult to secure client appointments for ride-along evaluations, making a successful ride along very difficult on short notice. (Dkt. No. 1 at 10.)

ORDER
C18-1029-JCC
PAGE - 2

Defendant asserts that each TBM was evaluated on Defendant's functional and behavioral assessment during the RIF process. (Dkt. No. 20 at 2.) Defendant contends that, of the candidates for termination, Plaintiff had the lowest combined score. (*Id*.)

On April 3, 2018, Plaintiff was terminated. (*Id.* at 13.) Plaintiff asserts that she was fired for illegal discrimination and retaliation. (*Id.* at 14.) Plaintiff brings age, gender, and disability discrimination claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e); the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 626; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C § 12101-02; and Washington's Law Against Discrimination (WLAD), Wash. Rev. Code. § 49.60. (Dkt. No. 1 at 14–18.) Plaintiff also brings a retaliation claim under the FCA, 31 U.S.C. § 3730(h); and a wrongful termination claim under Washington's Consumer Protection Act (CPA), Wash. Rev. Code § 19.86.020. (*Id*.)

During discovery, Plaintiff served interrogatories and requests for production seeking information related to her termination specifically, as well as Defendant's financial and employment practices on a nationwide scale. (*See* Dkt. No. 16.) Defendant objects to various interrogatories and requests for production on the grounds of relevance, attorney-client privilege, and as violative of the parties' prior stipulation regarding electronically-stored information ("ESI"). (*Id*.)

## II. DISCUSSION

### A. Motion to Compel Legal Standard

This Court strongly disfavors discovery motions and prefers that parties resolve discovery disputes on their own. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is a matter of "the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is withheld inappropriately or goes unanswered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The Court has broad discretion to decide whether to compel discovery. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

    **B.    Discovery Disputes**

        *1.  Interrogatory 4*

Plaintiff seeks information related to Defendant's internal investigations regarding matters alleged in her complaint, including Mr. Curto's investigation into Plaintiff's claim of an FCA violation and any investigation into Plaintiff's allegations of retaliation. (Dkt. No. 16 at 3–4.) Defendant has objected to this interrogatory on the grounds that the investigation is protected by the attorney-client privilege. (*Id.*) A communication is protected by the attorney client-privilege when: (1) legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communication relates to that purpose; (4) it is made in confidence; (5) by the client; (6) it is permanently protected at the client's insistence; (7) from disclosure by himself or by the legal advisor; (8) unless the objection is waived. *See Fischel v. Margolis*, 557 F.2d 209, 211 (9th Cir. 2006). The investigation conducted by Mr. Curto into Plaintiff's complaints meets the first seven elements, because the investigation was conducted by Mr. Curto for the purpose of providing confidential legal advice to Defendant, regarding a matter that could lead to legal action involving Defendant. (*See* Dkt. No. 16 at 24–25.)

Plaintiff claims that Defendant has waived its attorney-client privilege by asserting in its answer to Plaintiff's complaint that Mr. Curto investigated Plaintiff's claims and concluded that there was no violation of the FCA. (*See* Dkt. Nos. 7, 16.) The attorney-client privilege may be waived if the party asserting privilege alleges claims that the opposing party cannot adequately

dispute unless it has access to the privileged materials. *See In re Cavagnaro*, C07-0027-RJT, Dkt. No. 35 at 9 (W.D. Wash. 2007) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)). The remedy for such an assertion is an implicit waiver of privilege. *Id*; *see also Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976).

In order to allege a *prima facie* case of retaliation under the FCA, Plaintiff needs to show that she was engaged in protected conduct, by showing that she was "investigating matters which are calculated or reasonably could lead to a viable [FCA] action." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)). Plaintiff does not need to refute Defendant's assertion that there was no FCA violation in order to make out a *prima facie* case for retaliation under the FCA because Plaintiff need only show that her investigation was reasonable. *Moore,* 275 F.3d at 845. Furthermore, Plaintiff can discover the underlying facts contained in Mr. Curto's investigation, as the facts themselves are not privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Plaintiff can also discover communications and investigations conducted by Ms. Palacio, as Ms. Palacio works in Defendant's Human Resources department, and any investigation she conducted was not for the purpose of providing legal advice to Defendant. For these reasons, Defendant has not waived its attorney-client privilege with respect to Mr. Curto's investigation into Plaintiff's allegations involving an FCA violation. Plaintiff's motion to compel information related to that investigation is DENIED.

## 2. *Interrogatory 5 and Requests for Production 3 and 5*

Plaintiff seeks identification and documentation of all grievances made to the government by employees of Defendant on a nationwide scale. (Dkt. No. 16 at 5–7.) Plaintiff also seeks documentation of all internal investigations Defendant has conducted into matters of discrimination and FCA violations on a nationwide scale. (*Id.* at 4–5.) Plaintiff's complaint does not allege any facts to support an allegation that Defendant has engaged in a "pattern or practice" of discrimination nationwide. (*See* Dkt. No. 1.) Plaintiff has alleged only that Defendant

discriminated against her specifically when it terminated her. (*Id.* at 14.) Defendant argues that no other external grievances made to the government or any other internal investigation involve any of the alleged wrongdoers in the instant case. (Dkt. No. 16 at 5–7.) Any information related to other grievances or investigations is unrelated to Plaintiff's claims and irrelevant because it would not tend to show illegal discrimination or retaliation in Plaintiff's case. Therefore, Plaintiff's motion to compel discovery of information related to external grievances or internal investigations unrelated to Plaintiff is DENIED.

### 3. Request for Production 6

Plaintiff seeks all documents used in evaluating TBMs for termination from 2014 to the present, on a nationwide scale. (*Id*. at 7.) Defendant contends that Plaintiff was terminated as a result of the RIF process. (Dkt. No. 20 at 2.) Specifically, Defendant argues that Plaintiff had the lowest assessment score of all TBMs considered for termination in the Pacific Northwest region, and was fired as a result of that low assessment. (*Id*.) Information related to Defendant's firing practices on a nationwide scale is relevant to determining whether the standard used by the decisionmakers in Plaintiff's termination comports with company practices and standards in other RIFs or if it was merely a pretext for discrimination or retaliation. As Plaintiff's request is limited to documents related to termination decisions of only TBMs from 2014 to the present (Dkt. No. 16 at 7), production of this information does not present an undue burden on Defendant. The motion to compel production of documents in Request for Production 6 is GRANTED.

### 4. Requests for Production 9 and 10

Plaintiff seeks Defendant's financial reports for its Western district, including month-to-date and year-to-date performance reports, quarterly reports, financial statements, profits and losses reports, and summaries of the performances of sales employees in the Western district. (Dkt. No. 16 at 8.) Plaintiff also seeks employment files of all TBMs in the Western district. (*Id*.) Defendant's Western district encompasses 18 states and 6 regions. (Dkt. No. 20 at 1.) The

burden placed on Defendant to compile detailed financial reports and employee files for the entire Western district substantially outweighs the benefit of the information to Plaintiff. Defendant's month-to-date and year-to-date performance reports, quarterly reports, financial statements, and profits and losses reports are simply not relevant to Plaintiff's claims of discrimination and retaliation. Plaintiff's motion to compel these documents is DENIED.

But financial performance summaries and employment files of any TBMs that Plaintiff was compared against during the RIF process that led to her termination are relevant. If those TBMs scored as low or lower than Plaintiff, the RIF process could have been pretext for discrimination. Plaintiff's motion to compel financial performance summaries and employment files with respect to any TBM in the Pacific Northwest region, or any other TBM that Plaintiff was compared against during the 2018 RIF, is GRANTED.

### 5. *Interrogatory 8*

Plaintiff seeks demographic information of all TBMs nationwide, including their name, birthday, gender, last held position, date of hire, date of termination, and reason for termination, from 2016 to the present. (Dkt. No. 16 at 9.) Unless Plaintiff was compared against them in the RIF process, other employees' demographic information is irrelevant to Plaintiff's discrimination claims. Therefore, the motion to compel demographic information of any TBMs outside of the Pacific Northwest region is DENIED. But, the motion to compel the demographic information of TBMs in the Pacific Northwest region from 2016 to the present, and any other TBM who was compared against Plaintiff during the 2018 RIF, is GRANTED.

### 6. *Requests for Production 15 and 16*

Based on the parties' representations (*see* Dkt. No. 16 at 9–10), it appears that negotiations are ongoing regarding appropriate search parameters for Requests for Production 15 and 16. (*Id.*) The parties are ORDERED to continue efforts to meet and confer regarding disputes arising from these requests for production. To facilitate the resolution of the parties' discovery disputes without the need for further intervention by the Court, Defendant is hereby

ORDERED to produce a full and complete privilege log to Plaintiff within 14 days of the date this order is issued.

### 7. *Request for Production 22*

Plaintiff seeks the file of the non-MS patient who was prescribed Zinbryta. (*Id*. at 11.) In response to Defendant's confidentiality objection, Plaintiff has proposed a revision that seeks all patient enrollment forms related to Zinbryta patients for a specific period of time, with all patient identifying information fully redacted. (*Id*.) Plaintiff's revised request is overbroad and seeks irrelevant information because Plaintiff does not allege that more than one Zinbryta falsification occurred. (*See* Dkt. No. 1.) One falsification is enough to form Plaintiff's belief that an FCA violation occurred. Plaintiff's motion to compel information for all fourth quarter Zinbryta enrollees is DENIED.

However, the patient file of the non-MS patient who was prescribed Zinbryta is relevant to Plaintiff's retaliation claim. Under the FCA, in order to show that Plaintiff was engaged in protected activity—part of Plaintiff's *prima facie* case—Plaintiff needs to show that she was "investigating matters which are calculated or reasonably could lead to a viable [FCA] action." *Moore*, 275 F.3d at 845. Defendant argues that Plaintiff does not need the patient file because it is willing to stipulate that a non-MS patient was prescribed Zinbryta by a physician. (Dkt. No. 16 at 21.) But this by itself is insufficient to support an FCA action, as the actions *the physician* took in prescribing Zinbryta are not a violation of the FCA. However, evidence that Mr. Lykins knowingly falsified the ICD codes on the Zinbryta form for that patient tends to show that Plaintiff was investigating matters that could reasonably lead to a viable FCA claim, as Mr. Lykins's behavior could conceivably constitute such. Therefore, Plaintiff's motion to compel the patient services file of the non-MS patient who received Zinbryta is GRANTED. Defendant is ORDERED to redact all patient identifying information in the file.

### 8. *Native Form Requests*

Plaintiff requests the native form version of several documents produced in response to

Requests for Production 10, 15, 16, and 20, so that the metadata is reviewable. (*Id.* at 8–11.) The Court has previously noted the potential importance of metadata in the discovery phrase. *See Bailey v. Alpha Techs. Inc.*, C16-0727-JCC, Dkt. No. 4 at 2 (W.D. Wash. 2017). Defendant argues that Plaintiff's request for metadata violates the parties' stipulated order on ESI protocols, because the agreement allows the parties to produce documents in either "native or searchable PDF format." (*see* Dkt. No. 16 at 8–10; *see also* Dkt. No. 13 at 5.) Defendant asserts that it has met this requirement because it produced all requested documents in searchable PDF format. (Dkt. No. 16 at 28.)

However, a different provision of that same agreement states:

> [I]f the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced: document type; custodian and duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; file name and size; original file path; date and time created, sent, modified and/or received; and hash value.

(*Dkt.* No. 13 at 5.) Plaintiff seeks metadata to assess whether modifications occurred to certain requested documents, and if so, when those modifications occurred. (Dkt. No. 16 at 16–17.) Date and time of document modification is explicitly mentioned in the metadata provision as one of the fields required to be produced upon request. (Dkt. No. 13 at 5.) The metadata contained in these documents is relevant because evidence of modifications to evaluations or communications regarding Plaintiff bear on Plaintiff's showing of pretext. Plaintiff is requesting a finite set of documents in native form, and production of those documents does not impose an undue burden on Defendant that outweighs the benefit of the information to Plaintiff. Therefore, Plaintiff's request for the production of documents in native form is GRANTED. Defendant is ORDERED to produce the native form of the requested documents, or produce a log of the metadata that Plaintiff seeks. Further, once the parties reach an agreement with regard to Requests for Production 15 and 16, Defendant is ORDERED to comply with Plaintiff's request for those

documents in their native form.[1]

**III. CONCLUSION**

For the foregoing reasons, the parties' joint submission filed pursuant to W.D. Wash. Local Civ. R. 37(b) (Dkt. No. 16), is GRANTED in part and DENIED in part. The parties are required to comply with this order within 14 days of its issuance.

With respect to Defendant's pending motion for a protective order (Dkt. No. 23), the Court ORDERS the following:

1. Plaintiff is ORDERED to amend her proposed deposition topics to conform with the relevance findings in this order;
2. After such amendments, the parties are ORDERED to meet and confer regarding any remaining disputes related to the deposition notice at issue in Docket Number 23;
3. If the parties are unable to reach a resolution of the remaining disputed topics, the parties are ORDERED to submit a joint motion regarding those topics, pursuant to W.D. Wash. Local Civ. R. 37(b), within 14 days of the date this order is issued;
4. If the parties do file a joint motion, the parties are ORDERED to cabin their disputes to only those contained in Plaintiff's pending motion for a protective order. (Dkt. No. 23);
5. The Clerk is DIRECTED to strike Docket Number 23.

DATED this 19th day of June 2019.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[1] Defendant argues that if the Court grants Plaintiff's request for metadata, the Court should instruct Plaintiff to comply with Defendant's future requests for metadata. (Dkt. No. 16 at 28.) This request is DENIED, as Defendant has not made any showing of the relevance of any requested metadata it currently seeks or may be seeking in the future.

ORDER
C18-1029-JCC
PAGE - 10