THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| DANITA ERICKSON, | No. 2:18-cv-1029-JCC |
|---|---|
| Plaintiff, | |
| v. | REPLY IN SUPPORT OF BIOGEN'S MOTION FOR SUMMARY JUDGMENT MOTION |
| BIOGEN, INC., | |
| Defendant. | NOT ON MOTION CALENDAR: |
| | **August 30, 2019** |

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 0
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

## I. **REPLY ARGUMENT**

**A.  No Genuine Issue of Material Fact Exists on Plaintiff's FCA Retaliation Claim.**

Plaintiff fails to distinguish her situation from that of the plaintiffs in *Sicilia v. Boeing Co.*, 775 F. Supp. 2d 1243, 1249 (W.D. Wash. 2011) and *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266-67 (9th Cir. 1996). The court granted summary judgment in those cases on claims for retaliation under the False Claims Act.[1] This Court should do the same.

In *Sicilia*, the plaintiff submitted multiple verbal and written compliance complaints over the course of several years to HR, the legal department, the finance department, and Boeing's Compliance Risk Management Board. *See* 775 F. Supp. 2d at 1247-48. The plaintiff even stated he felt compelled to "go outside the company" with his complaints. *Id.* at 1247. This was far more extensive than what Plaintiff did here, submitting a single complaint of alleged off-label promotion of a drug. Yet, this Court granted summary judgment in *Sicilia* because—as here—the plaintiff failed to show a nexus between the complaints and any false claim, negating any objectively reasonable belief of a violation.

Plaintiff was not "investigating" off-label promotion as she asserts, like a private attorney general seeking to recover money for the government she believes has been bilked. Rather, like the plaintiff in *Sicilia*, she was merely making her subjective concerns known. Plaintiff did not even bother to ask whether anyone had received credit for the Zinbryta prescription. Had she bothered to "investigate" rather than speculating, she would have learned that Biogen did not give anyone sales credit for the off-label Zinbryta prescription, which Plaintiff now claims was her overarching concern:

> **Q. (By Mr. Griffin) Sure. If the government already approves the drug for an off-label use, everybody's eyes are wide open. Nobody's being defrauded or misled about what's going on here.**

---
[1] 31 U.S.C. § 3730(h).

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 1
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

A. <u>Yeah. If it was not tied to the promotion because of the sales credit.</u> That's -- sales is prohibited to go into offices for off-label promotion, and that. Pltf. Tr.[2] 189:16-22 (emphasis added).

It is indisputable that no one received sales credit for this Zinbryta prescription. *See* Dkt. 50 at 22; Declaration of Todd Billet ¶¶ 3-5.[3] Plaintiff admits that Mary Brown prevented that. Dkt. No. 61 at 8. That underscores the lack of impropriety or fraud, and it undermines Plaintiff's effort to show she had an objective belief that sales credit *was* given or that there was any fraud committed.

Plaintiff has further failed to show that Brown was aware that Plaintiff complained or that, even if Brown did know, that this created a retaliatory motive for the Zinbryta complaint. Brown did not know Plaintiff submitted the complaint; she only knew that there were discussions about the Zinbryta issue because it was unusual. Brown Tr. 88:6-22, 100:6—101:19. Brown assumed that this unusual situation (off-label prescription by a doctor treating a non-MS medical condition), not a complaint by Plaintiff, prompted Biogen's investigation. Brown Tr. 98:7—99:20. Even knew Plaintiff complained, Brown was not affected in any way by the complaint, and Plaintiff does not allege or show otherwise. Thus, Brown lacked both knowledge of the protected activity and motive to retaliate.

Plaintiff's speculative and conclusory assertions do not establish pretext. For example, Plaintiff speculates that Jim Lykins and a patient's doctor were "discussing Medicare fraud." (Dkt. No. 61 at 6). But she provides no objective basis for such speculation nor any evidence to support it. It is undisputed that the doctor had already prescribed the Zinbryta for an off-label use before Biogen was contacted for help. And it is undisputable that Lykins never even spoke to the doctor. Lykins Tr. 14:15-16:18. The Court should

---

[2] "Tr." refers to deposition transcript citations, which are attached as Exhibits to the Reply Declaration of Michael Griffin in Support of Motion for Summary Judgment.

[3] Although Biogen cited the Billet Declaration in its opening motion (Dkt. No. 50 at 22), Biogen inadvertently neglected to file the declaration due to an administrative oversight, and now submits it here. *See* Reply Declaration of Michael Griffin ¶2. Plaintiff's assertion that there was only one Zinbryta prescription in the Northwest Region in the fourth quarter of 2017 is not true, as Plaintiff knows. This filing causes no prejudice because Plaintiff has known about Mr. Billet since Brown's deposition on May 21, 2019, and Plaintiff did not raise or object to this omission in her Opposition. *See id.* Plaintiff has also known since May 23, 2019, that there was in fact a different, on-label Zinbryta prescription in her Region in Q4 2017 from a neurologist in Alaska. *See id.* ¶2. Biogen would not oppose Plaintiff's filing of a sur-reply strictly to address the Billet Declaration.

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 2
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1  disregard Plaintiff's conclusory, and incorrect, reference to the Zinbryta prescription as
2  "fraudulent." Dkt. No. 61 at 6-7. Plaintiff never even saw the prescription before this lawsuit,
3  Pltf. Tr. 183:17-21, and she has not proved that it was improper or fraudulent in any way.

4  Plaintiff has thus failed to show a good faith objective belief that Biogen defrauded
5  the government or that Biogen's reason for terminating her was a pretext for FCA retaliation.

6  **B.      Plaintiff Cannot Prove Retaliation Under the ADA, Title VII, or the WLAD.**

7  1. <u>Plaintiff cannot show that, but for her complaints, she would still be employed.</u>

8  A plaintiff must prove but-for causation to sustain a retaliation claim under the ADA
9  and Title VII. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362
10 (2013). As the Court explained: "Title VII retaliation claims must be proved according to
11 traditional principles of but-for causation, not the lessened causation test stated in § 2000e-
12 2(m)." This requires proof that the employee would still be employed absent statutorily
13 protected activity. *See id.*; *see also Brown v. Family Radio, Inc.*, 2014 U.S. Dist. LEXIS
14 26924 *5-6 (N.D. Calif. Feb. 28, 2014) (explaining that an employee must show she would
15 still be employed absent the protected status to prove but-for causation; collecting cases).

16 Plaintiff cannot meet this high standard. Even assuming Plaintiff complained to Keri
17 Palacio in HR about Brown "discussing" her migraines (which Palacio denies) and favoring
18 men, Plaintiff has not presented evidence that, but-for those alleged complaints, Plaintiff
19 would not have been selected for the RIF. Indeed, Plaintiff has failed to rebut Biogen's
20 showing that Brown lacked knowledge of Plaintiff's alleged complaints about disability *or*
21 sex discrimination. Plaintiff's retaliation claims under the ADA and Title VII fail.

22 2. <u>Plaintiff cannot show pretext in support of any of her retaliation claims.</u>

23 "The focus of a pretext inquiry is whether the employer's stated reason was honest,
24 not whether it was accurate, wise, or well-considered. **We do not sit as a superpersonnel**
25 **department that reexamines an entity's business decision and reviews the propriety of**
26 **the that decision.**" *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (citations
27 omitted, emphasis added). Plaintiff asks the Court to second-guess Biogen's termination
28

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 3
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

decision merely because Plaintiff herself subjectively believes that another employee should have been chosen instead. Pltf. Tr. 206:8—208:7. After asking the Court to accept her (and other witnesses') subjective opinions, Plaintiff criticizes Biogen's subjective comparison of her and her fellow TBMs. *See* Dkt. No. 61 at 5-6, 15.

The Ninth Circuit made clear long ago that an employer's use of subjective evaluation criteria does not necessarily indicate discrimination. As the court recognized in *Casillas v. United States Navy*, 735 F.2d 338, 345 (9th Cir. 1984);

> We have explicitly rejected the idea that an employer's use of subjective employment criteria has a talismanic significance: "Even assuming subjectivity was involved here, it has never been held that subjective evaluation by an employer is per se prohibited by Title VII, or alone shifts to the defendant the burden of proving absence of intentional bias …." **Title VII is the law's promise that employment decisions will not be based on non-permissible discriminatory criteria, not that subjective criteria will be eliminated.** [Plaintiff] cannot render sound business judgment illegal by labeling it subjective. Many criteria for higher level jobs are not easily articulable, and their conversion to writing does little to stop employers who desire to discriminate.

735 F.2d at 345 (quoting *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270 (9th Cir. 1980)) (emphasis added); *see also Jauregui v. City of Glendale*, 852 F.2d 1128, 1135 (9th Cir. 1988) (employers may use subjective factors to evaluate applicants and employees); *Stones v. L.A. Cmty. Coll. Dist.*, 796 F.2d 270, 274 (9th Cir. 1986) (employer reliance on subjective personal evaluations did not show bias). *Green v. Mariciopa County Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1125-29 (D. Ariz. 2003) (examining Ninth Circuit law regarding subjective evaluation criteria and granting summary judgment to employer).

In fact, the Ninth Circuit has expressly recognized that subjective criteria is "inherently less suspect" in higher level jobs where skills are "necessarily measured in more subjective terms." *Nanty v. Barrows Co.*, 660 F.2d 1327, 1334 (9th Cir. 1981), *overruled on other grounds*, *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996).

Here, there was nothing unusual, suspect, or inconsistent about Biogen using subjective evaluation criteria in the RIF process that would support a finding of pretext for

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 4
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

retaliation. *See Green*, 265 F. Supp. 2d at 1126 ("Plaintiff has not pointed to any evidence showing that Defendant's use of a subjective process was unusual or inconsistent with Defendant's general promotion or reassignment policies. Plaintiff points to no requirement or established practice at any time of an objective, committee-based promotion or reassignment process…."). Biogen used the same criteria for all employees terminated in the RIF nationwide. Palacio Tr. 106:14-20.

The genesis of the realignment that ultimately led to the RIF was purely objective. Allison 30(b)(6) Tr. 11:9—15:12. Biogen worked with a consultant, ZS Associates, to evaluate on a national basis the business needs of every Biogen region and territory with the goal of maximizing objectives, not with a goal of laying off employees. *Id.* 11:9—12:1. As part of that data-driven, objective evaluation, certain markets were identified for realignment, which consequently required some reductions. *Id.* Once Biogen identified the markets where a headcount reduction was needed, the first step in the analysis was objective; Biogen considered the TBMs' performance evaluation rating (OPR), which for TBMs included a performance score based on objective sales results as well as a behavioral score. Allison Tr. 55:8-56:12, 147:7-148:17, 151:16-25. In the Seattle area, since all four TBMs had the same evaluation score, Biogen, in its business judgment, compared them by sales competencies, which are an undeniably appropriate way for Biogen to assess TBMs.

Even if Biogen had relied solely on objective data, Plaintiff would have been laid off. Plaintiff claims Biogen should have laid off Matt Chapman instead of her, but Chapman outperformed her in 2017 (his first year). For example, Chapman had a higher President's Club ranking: 79/99 (79.79%) versus Plaintiff's 72/93 (77.41%). *See* Reply Griffin Dec. Ex. 10 at BGN 1099 & 11 at BGN 000029 (2017 Year-End OPR for Chapman and Erickson). Chapman also had a higher percentage toward sales goal for Tecfidera (TEC) in Q1, 2, and 3, and a higher percentage for Tysabri (TYS) in Q3. *See id.* And his TYS percentages to goal for Q1 and 2 were only slightly lower than Plaintiff's. *See id.* Thus, analyzing objective sales

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 5
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

data for Plaintiff and Chapman shows that Plaintiff still would have been laid off had sales results been used as the sole criterion for selection.

Plaintiff conflates Biogen's general performance evaluation process with the RIF selection process, claiming that Biogen did not follow a policy. Dkt. No. 61 at 15-16. First, those are two very different things. The OPR is an individual assessment of an employee's annual performance, while the criteria used in this RIF process relied on a forward-looking analysis of the TBMs' competencies to assess which three should remain on the team. Second, there is no Biogen policy regarding RIF criteria or process, so there is no evidence that Biogen deviated from such policy in applying the Functional and Behavioral Competencies as Plaintiff suggests. Nothing required Brown to seek "stakeholder feedback" in the RIF evaluation, and Plaintiff fails to show otherwise. Given the confidential nature of position elimination decisions, soliciting feedback for that purpose would be nonsensical. Instead, she attempts to confuse by suggesting that Biogen was required to follow the same process in carrying out the RIF that it follows in annual performance reviews. No evidence supports that or that Biogen ever used stakeholder feedback in evaluating employees for a RIF. Thus, the lack of stakeholder feedback here does not show pretext.

Plaintiff also criticizes Biogen for not doing what Plaintiff subjectively believes was an adequate investigation into Plaintiff's allegation of male favoritism by Brown. But she overlooks three key, undisputable facts: (1) Palacio *did* look into the one concrete issue Plaintiff raised, regarding merit increases, and informed Plaintiff that everyone on that team had received the same raises that year; (Palacio Tr. 171:17-172:17;) (2) Brown was unaware that Plaintiff complained of favoritism (Allison Tr. 183:1-184:15; Palacio Tr. 138:10-19); and (3) Allison immediately coached Brown on the issue (Allison Tr. 183:1—184:15), and no further favoritism concerns surfaced, thus accomplishing the goal of the anti-discrimination laws to effectively remedy alleged mistreatment.

Finally, Plaintiff incorrectly states that Biogen had selected her for termination in January or February 2018. Dkt. No. 61 at 8. Brown and Allison have consistently testified

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 6
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

that the decision was not made until late February/early March. Allison 30(b)(6) Tr. 38:1-7, 48:4-16; Brown 30(b)(6) Tr. 13:1-10. The fact that Plaintiff was identified as a bottom performer in Allison's January 2018 Talent Review is immaterial because Allison was not being asked at that time to make a RIF selection, and final decisions about who would be laid off in the RIF were not fully finalized as of January 31, 2018.  Allison 30(b)(6) Tr. 48:4-16.

**C.  Plaintiff Fails to Show Pretext for Discrimination Based on Perceived Disability.**

Plaintiff does not rebut Biogen's argument that she is bound by her judicial admission that she does not assert an *actual* disability. Thus, to avoid summary judgment, Plaintiff must show that her termination was a pretext for perceived disability. Under the ADA, Plaintiff must do so under the more stringent but-for causation standard. *See Murray v. Mayo Clinic*, Case No. 17-16803 at 15 (9th Cir. June 13, 2019) (joining other Circuits in adopting but-for causation in ADA Title I claims for disparate treatment).[4]

Plaintiff has presented no specific and substantial evidence that, but for Brown's alleged perception, Plaintiff would still be employed. *See Lattimore v. Euramax Int'l, Inc.*, 2019 U.S. App. LEXIS 16591, ∗2 (9th Cir. June 3, 2019) (affirming summary judgment). First, Brown did not in fact perceive Plaintiff to be disabled. *See* Dkt. No. 53 at 2.

Second, while Plaintiff claims that Brown discussed her migraines with Plaintiff's "colleague**s**" and "discussed [her] migraines with Sarah Lenoue," she was not part of any such discussions and her assertion is based on assumptions or hearsay. Dkt. No. 62 at ¶ 7, p. 2. Plaintiff fails to offer evidence that she has personal knowledge of these alleged discussions, so her testimony constitutes inadmissible hearsay and should be disregarded.

More importantly, these assertions are false because the evidence undeniably shows that Brown "discussed" Plaintiff's migraines with a single colleague—Lykins—on a single occasion when Lykins raised the issue. Lykins Tr. 103:15—106:7. Lenoue expressly denies hearing Brown discuss Plaintiff's migraines with Lykins. Lenoue Tr. 54:20—55:13. As Lenoue unequivocally testified:

---

[4] A copy of the *Murray* decision is attached to the Reply Declaration of Michael Griffin as Exhibit 12.

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR SUMMARY JUDGMENT- 7
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

> **Q. And so you didn't really overhear anything Mary Brown was saying in that conversation?**
>
> A. No.[5]

Lenoue also denies Brown discussed Plaintiff's migraines with her or anyone else:

> **Q. And when we first started talking about Danita Erickson's migraines, you mentioned that anything besides one-on-one conversations with this MS Bike event in September 2017.**
>
> **So I'm just curious, were there other one-on-one conversations with Mary Brown where she discussed Danita's migraine condition with you?**
>
> A. No. I can't think of anything specific, no.
>
> **Q. And to your knowledge, has Mary Brown ever discussed Danita's migraines with anybody else besides Jim Lykins?**
>
> A. Not that I'm aware.[6]

Plaintiff's self-serving testimony that Brown discussed her migraines "several" times with Plaintiff is vague and uncorroborated, not specific or substantial. But even assuming Brown did so, it is insufficient to show animus by Brown where it is undisputed that:

- Lykins, not Brown, initiated the lone corroborated conversation mentioning Plaintiff's migraines (Lenoue Tr. 54:20—55:13);

- Brown ended that conversation immediately (Lykins Tr. 105:14-22);

- Brown never showed malice toward Plaintiff (Pltf. Tr., 270:23-271:4);

- Brown never berated Plaintiff or raised her voice to Plaintiff (Pltf. Tr. 271:17-20);

- Brown never lost her temper with Plaintiff (Pltf. Tr. 271:21-22);

- Brown never made an insensitive joke or an offensive remark to or about Plaintiff (Pltf. Tr. 271:23-272:5, 55:20-23, 272:6-8).

Indeed, Biogen has demonstrated a *lack* of animus by Brown, who showed consideration and compassion for Plaintiff. During the September 5, 2017 migraine episode, for example, Brown helped Plaintiff and demonstrated concern for her welfare, after which

---

[5] Lenoue Tr. 56:2-4.
[6] Lenoue Tr. 59:6-17.

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 8
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1  Plaintiff profusely and sincerely thanked Ms. Brown. *See* Dkt. No. 50 at 3-4. On another
2  occasion, at a company meeting, Brown inquired whether Plaintiff would be more
3  comfortable sitting in a different location due to the strobe lights which Plaintiff had told
4  Brown might trigger migraines. Pltf. Tr. 59:1—62:1. *Id.* Plaintiff rejected Brown's offer to
5  move her seat because she did not want "special accommodation." Pltf. Tr. 61:20—62:1.
6  Based on that example, and given that Plaintiff never experienced any other migraines
7  observed by Brown, never asked for accommodations, and did not miss work for migraines, a
8  reasonable person in Brown's position would not perceive Plaintiff's migraines to be
9  disabling, which Brown did not. In fact, a reasonable person would conclude the opposite—
10 that Plaintiff's migraines were *not* disabling. Plaintiff was not a burden to Brown or Biogen
11 in any way because of her migraines—even during the September 5, 2017 incident, Plaintiff
12 did not miss her work appointments. Pltf. Tr. 29:5-13, 43:4-44:1. Thus, Brown had no motive
13 to discriminate. And Plaintiff's self-serving and uncorroborated characterizations of Brown's
14 alleged discussions of her migraines, cannot be considered specific, substantial evidence of
15 pretext sufficient to avoid summary judgment.

16       Plaintiff asks the Court to assume Brown harbored anti-disability animus toward
17 Plaintiff but provides no evidence of animus to support such an assumption. *See, e.g., Angell*
18 *v. Fairmount Fire Prot. Dist.*, 907 F. Supp. 2d 1242, 1252 (D. Colo. 2012) (no a prima facie
19 ADA claim where supervisor did not make comments reflecting a discriminatory animus);
20 *Gjokaj v. United States Steel Corp.*, 700 Fed. Appx. 494, 504 (6th Cir. 2017) (affirming
21 summary judgment where plaintiff failed to show disability-based animus). Thus, Plaintiff
22 lacks specific and substantial evidence of pretext and cannot meet either the but-for or
23 substantial motivating factor causation standards under the ADA or WLAD.

24 **D.**     **Plaintiff Fails to Show Her Termination was a Pretext for Sex Discrimination.**

25       Plaintiff hypocritically relies on subjective perceptions that Brown "favored" men to
26 support her claim for disparate treatment based on sex. But she cannot create an issue of fact
27 by relying on a declaration that contradicts prior deposition testimony. *See Kennedy v. Allied*
28

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 9
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

*Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony); *Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir. 1985) (summary judgment would be of little use if a party could raise a fact issue simply by submitting an affidavit contradicting prior testimony); *Paradise Constr., LLC v. Signature Flight Support Corp.*, 2018 U.S. Dist. LEXIS 85952, 2018 WL 2317609 (W.D. Wash, May 11, 2018) (Plaintiff cannot defeat summary judgment by producing a declaration that contradicts prior deposition testimony)

When asked at deposition for all the facts supporting her sex discrimination theory, Plaintiff identified: (1) that she "was replaced with a younger male" and (2) that Brown sought out the opinions of men more than women during "ride-alongs." Pltf. Tr. 69:10-23, 70:23-71:22. But in her summary judgment declaration, Plaintiff testifies at length about other alleged examples of Brown showing favoritism toward men. *See* Dkt. No. 62 at ¶ 8. This is precisely the type of contradiction that cannot defeat summary judgment.

Plaintiff's reliance on vague, generalized testimony from Lenoue and Shane Volkmann fails to show that Biogen's explanation for selecting Plaintiff was a pretext for sex discrimination. Lenoue believes Brown showed favoritism because Lykins was on committees, and she had the impression that Lykins, Steve Esola, and Volkmann, were Brown's "go to" people in the region. Lenoue Tr. 130:15—131:3; 152:15-21. But neither Lenoue nor Plaintiff identifies any tangible benefit or advantage to being on a committee. Lenoue herself also has been on leadership committees, which involves more work without more pay. Lenoue Tr. 127:25—128:14, 129:8-15. The commitment is minor, involving one call per month. Lenoue Tr. 130:7-14. In short, committee membership was not a material benefit. Neither Plaintiff nor Lenoue provide evidence that Brown denied them membership on any committee. Thus, even assuming male employees were on more committees (of which there is no evidence in the record), that does not show that Brown favored men.

Also, Lenoue admitted that two men who were promoted during Brown's tenure as Regional Director deserved their promotions. Lenoue Tr. 131: 10-23. She also admitted that

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 10
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

in the two instances when she expressed interest in a promotional opportunity, her failure to be promoted was not because of anything Brown did. Lenoue did not ask Brown for help in applying for the first opening (Lenoue Tr. 155:3-17), and that position was relocated to Portland before she could apply. Lenoue Tr. 153:24—154:9. Regarding the second position, Lenoue interviewed, but the position was never filled. Lenoue Tr. 156:15—158:14.

Regarding Volkmann, his testimony does not support Plaintiff's theory of sex discrimination. In fact, Volkmann testified that Brown *supports* women at Biogen. Volkmann Tr. 75:24-76:1. In addition, Volkmann: (1) never told Allison that Brown "favored" men. Volkmann Tr. 113:2-19; (2) could not provide *a single example* of Brown supporting men more than women. Volkmann Tr. 114:17—115:15; (3) had no knowledge whether Brown helped or did not help Plaintiff with job applications within Biogen. Volkmann Tr. 91:18-24; (4) had no knowledge whether Plaintiff was denied a position she sought on a team or committee. Volkmann Tr. 93:11-14, 95:17-25; (5) was unsure whether Brown called on more males during meetings simply because they raised their hands more. Volkmann Tr. 98:23-99:12; and (6) never heard Brown make any derogatory or negative remark or joke about women in general or Plaintiff in particular. Volkmann Tr. 100:2-13.[7]

Thus, neither Lenoue's nor Volkmann's testimony regarding Brown allegedly favoring men constitutes specific or substantial evidence of pretext for sex discrimination.

**E.  Plaintiff's Shifting Wrongful Discharge Rationale Supports Dismissal of that Claim.**

Plaintiff's Opposition fails to show that her discharge (1) "may have been motivated by reasons that contravene a clear mandate of public policy" or (2) any public-policy-linked conduct was a significant factor in the discharge. *See Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 725 (2018) (affirming summary judgment for employer).

To support this claim, Plaintiff first relied on the Washington Consumer Protection Act, RCW 19.86.020 (CPA). *See* Dkt. No. 1 at 17-18. Plaintiff fails to rebut Biogen's

---

[7] Plaintiff also misstates Volkmann's testimony by asserting "Amo Cummings told Volkmann she *reported* Brown." Dkt. No. 61 at 5-6, citing Volkmann Tr. 72:18—73:10. That section of Volkmann's testimony shows that Cummings reported *to* Brown.

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 11
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

showing that the CPA does not create a clear mandate of public policy forbidding Biogen from helping a doctor obtain lawfully prescribed medicine for a patient who had permission to receive it for an off-label **use**. The CPA protects against deceptive acts harming the *public*; it does not apply in this context where there is no evidence of deception and where Plaintiff's complaint was purely private. She has not shown that she engaged in public-policy-linked conduct or that her complaint was a significant factor in her layoff.

Again, Plaintiff knew the patient was approved for Zinbryta before Biogen was asked to help fill the prescription. She knew it was for an anemia patient. Plaintiff disingenuously suggests that she did NOT know this by asserting, "Nowhere in the patient file does it explain this is an off-label use of Zinbryta for aplastic anemia." Dkt. 61 at 8. But Plaintiff alleges throughout her Complaint that the patient had aplastic anemia (Dkt. No. 1 at 5, 6, 7, 8, 9, 10, 11) and testified to this. Pltf. Tr. 177:8-13, 182:17-25, 187:4—188:3. Plaintiff cannot now try to deny her own allegations about what she knew about this prescription.

Recognizing that the CPA does not support her theory, Plaintiff tries to move the goalposts by invoking for the first time in this lawsuit Washington's Medicaid False Claims Act, RCW 74.66.020(1) to support this claim. The Court should reject Plaintiff's new legal theory. First, there is no evidence that the Zinbryta patient here was a Medicaid, as opposed to Medicare, patient. Second, even if the patient were a Medicaid patient, Plaintiff presents no evidence that Biogen or any Biogen employee submitted a "fraudulent claim for payment," caused a "false record or statement material to a false or fraudulent claim" to occur, or "conspired" to do the same to Medicaid. *See* Dkt. No. 61 at 25 (citing RCW 74.66.020(1)). The Court should reject Plaintiff's attempt to inject a new theory of liability into the case two months before trial.

There is nothing wrongful about laying off an employee who cannot show a good faith, objective belief that her complaint implicated a mandate of public policy.

## II.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims with prejudice.

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR SUMMARY JUDGMENT- 12
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1
2   Respectfully submitted this 30th day of August, 2019.
3
4                                        JACKSON LEWIS P.C.
5
                                         By:    *s/ Michael Griffin*
6                                               Michael Griffin, WSBA #29103
                                                Daniel Crowner, WSBA #37136
7                                               520 Pike Street, Suite 2300
                                                Seattle, WA 98101
8                                               206-405-0404
                                                michael.griffin@jacksonlewis.com
9                                               daniel.crowner@jacksonlewis.com
                                                Attorneys for Defendant
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 13
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

# DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the United States of America that on this day, I electronically filed a true and accurate copy of the document to which this declaration is affixed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Stephanie Bloomfield, WSBA #24251
James Beck, WSBA #34208
Janelle Chase-Fazio, WSBA #51254
Gordon Thomas Honeywell LLP
1201 Pacific Avenue, Suite 2100
Tacoma, WA 98401
253-620-6500
Sbloomfield@gth-law.com
jbeck@gth-law.com
jchasefazio@gth-law.com

Attorneys for Plaintiffs

DATED this 30th day of August, 2019.

_____
Heather H. Adams

4825-1106-6786, v. 5

REPLY IN SUPPORT OF BIOGEN'S MOTION FOR
SUMMARY JUDGMENT- 14
(Case No. 2:18-cv-1029-JCC)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404