UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANITA ERICKSON,

                          Plaintiff,

vs

BIOGEN, INC.

                          Defendant

NO.  2:18-cv-01029-JCC

~~PROPOSED~~ PRETRIAL ORDER

## I.    JURISDICTION

Jurisdiction is vested in this Court pursuant to federal law (42 U.S.C. § 12101 et seq., 42 U.S.C. § 2000e et seq., 31 U.S.C. §§ 3729, 3730(h)) under 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367.

## II.    CLAIMS AND DEFENSES

### A. The Plaintiff's Claims:

1.    Plaintiff asserts that Defendant violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), by treating her differently based upon her perceived disability and terminating her employment based upon her disability, causing damages to Plaintiff.

2.    Plaintiff asserts that Defendant violated Plaintiff's rights protected by

PROPOSED PRETRIAL ORDER -1 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

Washington's Law Against Discrimination (WLAD) RCW Chapter 49.60 *et seq.*, by treating her differently based upon her perceived disability and terminating her employment based upon her disability, causing damages to Plaintiff.

3.      Plaintiff asserts that Defendant violated Plaintiff's rights under Title VII, 42 U.S.C. § 2000e, by treating her differently based upon her gender and terminating her employment based upon her gender.

4.      Plaintiff asserts that Defendant violated Plaintiff's rights under the WLAD, RCW Chapter 49.60 *et seq.*, by treating her differently based upon her gender and terminating her employment based upon her gender.

5.      Plaintiff asserts that after she engaged in protected activity under the ADA and Defendant retaliated against Plaintiff by taking adverse action against her in violation of the anti-retaliation provisions of the ADA. *See* 42 U.S.C. § 12203.

6.      Plaintiff asserts that after she engaged in protected activity under Title VII Defendant retaliated against Plaintiff by taking adverse action against her in violation of its anti-retaliation provision. *See* 42 U.S.C. § 2000e-3.

7.      Plaintiff asserts that after she engaged in protected activity under the WLAD, Defendant retaliated against Plaintiff by taking adverse action against her in violation of the WLAD anti-retaliation provisions. *See* RCW 49.60.210.

8.      Plaintiff asserts that she reasonably believed that an employee of Defendant was attempting to fraudulently obtain payment for an off-label sale of Zinbryta to a Medicare patient in violation of the False Claims Act (31 U.S.C. § 3729), protested this action and was terminated in retaliation.

9.      Plaintiff asserts that Defendant wrongfully terminated her employment in violation of public policy under Washington law for protesting and reporting what she

PROPOSED PRETRIAL ORDER -2 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

reasonably believed to be fraudulent conduct regarding an off-label sale of Zinbryta to a Medicare patient.

## B. Defendant Biogen's Defenses

1.      Biogen denies all of Plaintiff's claims. All of Biogen's decisions relating to Plaintiff were based on legitimate, non-discriminatory and non-retaliatory reasons.

2.      Under the ADA and WLAD, Plaintiff was not actually disabled and Biogen did not perceive her to be disabled.

3.      Under the ADA, any perceived disability was transitory and minor.

4.      Under the ADA, WLAD, and Title VII, Plaintiff's migraines and gender played no role in any decision by Biogen.

5.      Under the ADA, WLAD, and Title VII, Plaintiff's alleged complaints about discrimination played no role in any decision by Biogen.

6.      Under the False Claims Act, Plaintiff lacked a reasonable, good faith belief that Biogen committed fraud against the government or was attempting to obtain a fraudulent payment or commission payment of any kind.

7.      Under the False Claims Act, Plaintiff's complaint of off-label promotion of Zinbryta played no role in any decision by Biogen.

8.      Under Washington common law and the Washington Consumer Protection Act, RCW 19.86.020, et seq., Plaintiff did not engage in public-policy linked conduct.

9.      Even if Plaintiff proves that a protected status or activity played a role in a decision by Biogen, Biogen would have made all the same decisions relating to Plaintiff regardless of any protected status or activity.

10.     Biogen made reasonable, good faith efforts to prevent discrimination and retaliation of any kind such that, even if Plaintiff proves a violation of Title VII or the ADA,

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Plaintiff is not entitled to an award of punitive damages.

11.     Plaintiff has failed to mitigate her economic and non-economic damages or otherwise avoid consequences.

### III.     ADMITTED FACTS

The following facts are admitted by the parties:

1.     Defendant Biogen, Inc. (Biogen) is a biotechnology company that sells therapeutics to treat Multiple Sclerosis.

2.     Biogen is a company that does business in Western Washington.

3.     Biogen maintains a Non-Discrimination and Non-Harassment Policy that prohibits all forms of workplace discrimination, harassment, and retaliation. Plaintiff acknowledged this policy in writing.

4.     Biogen maintains a Code of Business Conduct that also prohibits discrimination, harassment, and retaliation against employees.

5.     Biogen's Non-Discrimination and Non-Harassment Policy and Code of Business Conduct provide employees with avenues to raise workplace concerns, including anonymous methods.

6.     Biogen currently divides its Field Sales organization into Divisions, each led by a Divisional General Manager. Divisions are divided into Regions, and Regions are divided into Territories. A Regional Director leads each Region, and Territory Business Managers (TBM) are the Field Sales employees primarily responsible for selling Biogen's therapies.

7.     Plaintiff resides in Tacoma, Pierce County, Washington, and worked for Defendant in Western Washington and Alaska.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

8.     The events that form the bases for Plaintiff's claims occurred in Washington and Alaska.

9.     Danita Erickson is a woman with over 20 years of experience in the medical sales industry. Erickson was hired at Biogen in 2011 as a Senior Area Business Manager, and her position later was retitled to Senior Territory Business Manager ("TBM").

10.    Biogen classifies its TBMs into three categories: Executive TBM, Senior TBM, and TBM.

11.    Erickson worked in Biogen's West Division, in its Northwest Region.  She was assigned the Tacoma territory, which included Tacoma, Alaska, the South Sound, and some customers in Seattle. Erickson was partnered in the Tacoma territory with Executive TBM, Jim Lykins.

12.    In late 2016 Erickson began reporting to a new manager, Northwest Regional Director Mary Brown, who is female.

13.    In 2017 TBM Matt Chapman partnered with Senior TBM Sarah Lenoue to service the Seattle territory, which included the greater Seattle area with a few accounts north of Seattle.

14.    In September 2017, Biogen hired Zac Allison, who became the Division General Manager of Biogen's West Division and Mary Brown's direct supervisor.

15.    TBMs are formally reviewed every six months and receive an "OPR rating," at the midyear point and at the end of the year.  The rating is numerical, 1 for "developing", 2 for "proficient" and 3 for "excels".

16.    The three peers Plaintiff was compared against in the March 2018 reduction in force (RIF) also received identical ratings of "2/2" or "solid" on their 2016

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

and 2017 annual performance reviews, apart from Chapman, who only had a 2017 review, in which he also was rated "2/2."

17.     Plaintiff experienced a migraine on September 5, 2017, on a business trip with Brown.

18.     Plaintiff was able to reschedule her appointments during the trip.

19.     Biogen never put Plaintiff on a performance improvement plan or suspended her for any reason.

20.     In March 2018 Danita Erickson's base salary was $143,549.08.

## IV.     PARTIES' CONTENTIONS

A.     **The Plaintiff contends as follows:**

1.     Biogen is a Delaware corporation that does business in Western Washington, throughout the United States, and globally.

2.     Biogen employs over 8,000 employees.

3.     Biogen's TBMs are classified based on experience and ability.  A Senior TBM is more experienced and knowledgeable than a TBM. Senior TBMs earn more than TBMs and are recognized as being with the company long enough or having enough industry knowledge to be eligible for the designation as a Senior versus regular (non-Senior) TBM.

4.     Erickson has suffered from migraine headaches for over ten years. Erickson's migraines can be severely debilitating. Sometimes one migraine lasts two days and sometimes Erickson has six to eight migraines in a month.

5.     Erickson's migraines are triggered by many things, including stress and external factors. Air travel is not a particular trigger for Erickson's migraines and her physician has not recommended she avoid air travel.

PROPOSED PRETRIAL ORDER -6 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

6.     Erickson's migraine condition is an impairment that substantially limits one or more major life activities.

7.     In September 2017, Erickson suffered a debilitating migraine on a sales trip with Brown. Brown seemed understanding at the time, but soon after began questioning Erickson about her migraines. Brown expressed concern about Erickson's ability to do her job due to her migraines and recommended that Erickson seek other employment.

8.     Brown also discussed Erickson's migraine condition with her colleagues without Erickson's permission.   Brown asked Lykins about his observations of the frequency and severity of Erickson's migraines.

9.     During the time Brown was her manager, Erickson noticed Brown favored male TBMs over female TBMs. Brown disproportionately called on male TBMs during meetings to report results in their territories, assigned male TBMs to committees that gave them exposure in the industry, supported male TBMs with promotions in the company, and assigned male TBMs more advanced tasks like hosting the new Division Manager for a day of sales calls in the field.

10.     In February 2017 Brown hired Matt Chapman as a regular (non-Senior) TBM.

11.     In contrast, Brown regularly disregarded comments made by female TBMs at meetings, overlooked female TBMs for committee assignments, refused to participate in promotions female TBMs sought in the company, and assigned female TBMs to more administrative tasks, such as finding a dinner location for group meetings.

12.     Erickson's coworkers noticed the same issues. Lenoue noticed Brown favored men when deciding opportunities at the regional level. Brown spent more time

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

and energy helping male TBMs apply for promotions within the company, including helping them prepare for interviews.

13.     Shane Volkmann also noticed and reported Brown's favorable treatment of men over women during his meeting with Division Manager Zac Allison in November 2017. Volkmann reported that Brown should be treating her female TBMs better -- or at least equally – to the male TBMs. Volkmann also informed Allison that Erickson had reported Brown's favoritism to him.

14.     In 2017, Zinbryta was a drug in the Biogen portfolio that was FDA approved to treat Multiple Sclerosis (MS). It was hard to sell because of its safety profile; patients had to fail on at least two other drugs before they could be prescribed Zinbryta.[1] The Tacoma Territory had a quarterly Zinbryta quota of one sale. The incentive compensation, or commission payment for Zinbryta was triggered when a prescriber submitted a Biogen "START form", not when the drug was actually sold or administered to the patient.

15.     Critically, the Zinbryta START form is pre-filled with the International Classification of Disease (ICD) codes for MS, and by signing the START form the provider "certifies that the rationale for prescribing ZINBRYTA therapy is for a primary diagnosis of ICD-9:340/ICD-9:340/ICD-10:G35."[2] The START form references MS throughout and does not encompass or contemplate any other use, such as an off-label use.

16.     In September 2017, Lykins became involved in the prescription of Zinbryta for an off-label use with a Medicare patient with aplastic anemia.

---

[1] Zinbryta was pulled from the U.S. market in March 2018 for safety issues.

[2] Both are MS Codes, the code changed in October 2015 and the form includes both versions. *See* https://icd.codes/icd9cm/340 (IDC9 used until October 2015, then ICD-10 code used); *see also* https://www.cms.gov/Medicare/Coding/ICD10/index.html.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

17.    On September 14, 2017, Lykins texted Erickson: "There is a Zinbryta form showing up on our list.    It is from a hematologist from Olympia."    Knowing that hematologists do not treat MS, Erickson took no steps to attempt to involve herself in this off-label use of Zinbryta.

18.    In a discussion with Brown and Erickson, Lykins raised the idea of getting involved to get credit for the sale to the hematologist.    Erickson responded that she believed that getting involved in marketing and seeking a commission for an off-label use of a drug with a false diagnosis code for a Medicare patient was a violation of federal law as well as a violation of Biogen's Code of Conduct.

19.    Biogen has a Code of Business Conduct that requires TBMs to report potential issues, such as the off-label use or promotion of a drug. TBMs are instructed: "continue to raise your concern until it has been addressed . . . you should consider contacting your manager's manager, another manager, the Compliance Helpline, or one of the other resources listed in the Code."

20.    On September 15, 2017, a Biogen case manager questioned whether it was appropriate to participate in the prescription since the drug would not be used for MS treatment. Erickson was concerned Lykins and the provider would engage in Medicare fraud because, if submitted, the pre-filled Zinbryta START form would falsely represent that the prescription was for on-label use to treat MS when it was really for off-label use.

21.    On September 18, 2019, Lykins invited Erickson to accompany him to call on the hematologist who was prescribing Zinbryta off-label for a Medicare patient with aplastic anemia.

22.    Erickson objected directly to Lykins about the potential false claim to Medicare. When Lykins continued with his involvement to secure a fraudulent START form

PROPOSED PRETRIAL ORDER -9 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

for the off-label Zinbryta prescription, Erickson expressed her concerns to Brown. Brown ignored her concerns and took no action to stop Lykins' participation in the fraudulent START form.

23.     In November 2017, Allison visited Seattle to meet Brown's sales team. Brown selected Lykins to spend significant time with Allison. During that visit, Allison interacted with Erickson on a limited basis during two introductory meetings. In the first meeting, Lykins and Allison sat in chairs in front of the doctor and Erickson sat behind them. This meeting lasted less than an hour and Lykins and Allison did most of the talking. The second meeting was 10 to 15 minutes with a Veterans Affairs (VA) doctor, in which no sales were discussed as the meeting was primarily to introduce Allison.  At the end of that day during dinner, Erickson voiced her opposition to Allison directly about Lykins' attempts to earn a commission on the off-label Zinbryta sale.

24.     Just after Allison left Seattle and Erickson's attempts to protest Lykins' campaign to get a START form and commission for the off-label sale, Lykins texted Erickson on November 16, 2017: "We are finally going to get a start form for the aplastic anemia patient in Olympia."

25.     Biogen uses the submission of Zinbryta START forms as a trigger to pay a commission on the sale.  The START form is not required for an off-label use, and there are other forms that will allow the physician to fill the prescription, such as working directly with a specialty pharmacy, since the drug requires a special monitoring process due to its dangers.

26.     The only purpose of submitting a fraudulent START form in the context of an off-label prescription of Zinbryta would be to obtain a commission on the sale.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

27.     TBMs are not supposed to receive commission payments for off-label use of Biogen drugs.

28.     However, Biogen's Incentive Compensation department makes no effort to ensure that commissions are not paid for off-label sales of Biogen products.

29.     On December 1, 2017, Biogen's CEO sent an email about obligations to report. On December 4, 2017, Brown sent an email congratulating Erickson's territory for meeting their Zinbryta goal. The only Zinbryta sale ever discussed or in the pipeline at this time was the off-label sale. Erickson believed Brown's email confirmed the hematologist in Olympia had submitted the Zinbryta START form, misrepresenting to Medicare that the prescription was for MS instead of aplastic anemia.

30.     TBMs cannot participate in promotion of any off-label use of a Biogen product and must "take special care to avoid even the appearance of unduly influencing" clinical decisions, promoting Biogen products only "for the uses that have been approved" by the FDA.

31.     After Lykins, Brown, and Allison disregarded Erickson's verbal reports, and believing that Brown's email confirmed Medicare fraud had occurred, Erickson reported the issue to the Biogen ethics hotline on December 6, 2017. Her report notes that, "Danita confronted Mary [Brown] and is currently in fear of retaliation."

32.     Erickson reviewed the Zinbryta patient disposition report that she could view on her computer and it reflected "Therapy Initiated" for the aplastic anemia patient on December 9, 2017.

33.     Erickson followed up by speaking to Biogen's in-house counsel Dan Curto in December 2017, when he investigated Erickson's reports. Curto also interviewed Lykins and Brown, and spoke to Keri Palacio in Human Resources.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 · FACSIMILE (253) 620-6565

34.     Notably, after speaking with Curto, Brown was instructed to take action to ensure that her region would not receive a commission on the off-label sale reported by Erickson.

35.     In January 2018, about a month after Erickson filed her report and Curto launched his investigation, Erickson spoke to HR manager Keri Palacio about Brown's repeated commentary regarding her migraines, as well as Brown's preferential treatment of male TBMs and her retaliation concerns. Erickson was the second Biogen employee to report Brown's preferential treatment of men to Biogen, as Volkmann had reported directly to Allison months earlier.

36.     Contrary to company policy, Palacio did not investigate the allegations because she and Allison "did not feel that the statement was justified." Palacio determined after speaking to Biogen in-house counsel Curto that Erickson's (and Volkmann's) reports regarding Brown were not reports of discrimination. Palacio took contemporaneous notes of Erickson's reports, which were not preserved or produced in this lawsuit. Neither Palacio nor Allison documented Volkmann's report, but they made the decision that Allison would verbally counsel Brown regarding Erickson's report during her 2017 year-end review in January or February 2018.

37.     When the Biogen finally produced its patient file for the aplastic anemia patient following the Order of this Court to do so, it confirmed that forms signed and submitted by the physician used the MS diagnosis code. It also confirms this patient's primary medical insurance was Medicare. Nowhere in the patient file does it explain this is an off-label use of Zinbryta for aplastic anemia.

38.     In late January or early February 2018, Brown contacted Todd Billet, who oversaw Biogen's Incentive Compensation department at the time, to tell him that a

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 · FACSIMILE (253) 620-6565

commission should not be paid on the off-label Zinbryta prescription to the Medicare patient.

39.     On February 20, 2018, Brown emailed Billet to remind him about "the ZIN start form for Tacoma that should not count." Billet responded: "Confirming that this ZIN SF [START form] was flagged and removed from IC [incentive compensation] crediting.

40.     TBMs are competitively rated in OPR's in comparison with other TBMs in their peer group. The guidelines Biogen provides to instruct how to rate TBMs state that "stakeholder feedback" from peers or customers is the "key to a fair review."

41.     In the OPR's TBMs are rated in two categories with numerical ratings (1=Developing; 2=Proficient; or 3=Excels). The first OPR category rated is based on the TBM's objective sales data and performance, and the second OPR category rated is based upon the regional manager's subjective assessment of four "competencies.". The competencies rated are: (1) territory and account planning, (2) business knowledge, (3) sales disposition, and (4) customer-focused selling.

42.     By late January 2018, Brown and Allison identified Erickson for realignment, in other words – termination -- and placed her on a list of "bottom performers" presented publicly at a division meeting.

43.     This behind-the-scenes decision was made a month before Biogen directed Brown to evaluate TBMs in her territories for the RIF and before Brown was even aware of the RIF criteria.[3] Allison ratified the decision to terminate Erickson as did Palacio.

---

[3] Incidentally, this decision also came <u>before</u> Erickson received her 2017 year-end performance review, in which she was given a solid 2/2 rating as compared with the rest of her peers. Her 2017 end of year review did not indicate any problems with performance, although she had already been selected for termination and was allegedly "developing" in customer focused selling.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

44.     On January 19, 2018, Brown sent Allison a text describing a concern and desire not to "expose" herself, in reference to their plan to terminate Erickson.

45.     Not knowing she had already been identified for termination, Erickson repeated her concerns about Brown to Palacio in February 2018.

46.     A month later, in mid-February 2018,[4] Palacio sent the RIF criteria to managers: The first step was to compare territory TBMs' OPR ratings from performance reviews, the second step was to subjectively rate the TBMs in three sales competencies, and the third step was based on tenure with the company. Biogen did not consider sales performance in the 2018 RIF aside from the OPR rating.

47.     Plaintiff provided Defendant with "solid" or better job performance at mid-year and year-end each and every year following her hire.

48.     Erickson never received a "developing" rating on any OPR category during her entire employment with Biogen.

49.     Plaintiff was given a rating of "2/2" defined by Biogen as "solid" on her 2016 and her 2017 annual OPRs, signifying that she met sales expectations and was proficient in all four sales competencies.

50.     On the first evaluation step, Erickson and her peers had all received the same OPR rating of 2/2 and were all tied.

51.     In the second step, Brown subjectively ranked Erickson, Lykins, Lenoue, and Chapman. Brown rated Erickson as "developing" for customer focused selling, giving her the lowest overall score of the four TBMs. Brown rated Chapman "proficient" in all

---

[4] In the meantime, after she had identified Erickson for termination in mid-January, Brown performed Erickson's final 2017 review in early February, in which she rated Erickson as proficient in all the subjective competencies.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 · FACSIMILE (253) 620-6565

areas, although she had rated him "developing" during a 2017 ride along and documented this in a "Field Coaching Report" or FCR.

52.     Brown did not review any performance reviews, field ride along reports, sales data, or guidelines for rating TBMs in making her subjective ratings in which she decided Erickson was rated lowest. No written documentation supports Brown's ranking of Erickson below Lenoue and Chapman in the RIF decision. To the contrary, 2017 regional sales ranking data for these four TBMs in 2017 ranked Lykins first, Erickson, second, Lenoue third and Chapman fourth.

53.     The third step was tenure. Had Brown not ranked Erickson subjectively lower, Chapman would have been selected as he had the least tenure. In reality, Brown and Allison had already made the decision to select Erickson for termination a month before Brown received the RIF criteria to justify the decision.

54.     Meanwhile, Palacio ratified the decision to terminate Erickson, despite her knowledge of Erickson's reports of gender discrimination and FCA reporting and knew of Erickson's fear of retaliation. Palacio knew also of the other gender discrimination concerns raised about Brown and was concerned that the only two TBMs Brown chose for termination from her territories were women, but the only action Palacio took to ensure it was a fair decision was to discuss it with Brown and Allison.

55.     In addition, the territory identified for realignment and reduction was Seattle, not Tacoma. This would have resulted in Chapman's termination. The RIF territory was expanded to include Tacoma, even though a similar process did not occur with the adjoining Portland and Eugene territories under Brown in Oregon.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

56.     Following Erickson's termination, Lenoue remained in Seattle (the territory being reduced) and her partner Chapman, who had been at Biogen only one year, was moved to Tacoma, replacing Erickson as Lykins' partner.

57.     After Erickson was terminated, Brown told the TBMs that the RIF decision "had all been determined by the HR department."

58.     Following her termination, Erickson was subject to a noncompete, precluding her from selling MS therapies for a year.  In addition, a non-solicit prevented her from calling on her former physician clients for two years.

59.     Erickson has sought work in a variety of pharmaceutical sales positions. She owns a home in Tacoma and has largely focused on Western Washington-based opportunities. To date she has not yet secured reemployment, despite having numerous interviews and call backs.

60.     Erickson has suffered depression, anxiety, and loss of enjoyment of life as a result of the retaliation and wrongful termination, which she has addressed by treatment with her primary care physician, Dr. Dennis Galvon.

B.     The Defendant contends as follows:

1.     Biogen is a biotechnology company that researches, develops, markets, and manufactures therapies for people living with serious diseases, including Multiple Sclerosis.

2.     Biogen trains all new managers regarding Biogen's Non-Discrimination and Non-Harassment Policy and its Code of Business Conduct.

3.     Biogen's Commercial Field Sales organization is responsible for selling Biogen's therapies.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

4.      The Patient Services department works with Field Sales to help patients, healthcare providers and pharmacists by providing information and facilitating prescriptions.

5.      Biogen divides its Field Sales organization into Divisions, each led by a Divisional General Manager. Divisions are divided into Regions, and Regions are divided into Territories. Biogen periodically reorganizes its Field Sales organization based on business needs and sales strategy.

6.      A Regional Director leads each Region, and TBMs are the Field Sales employees primarily responsible for selling Biogen's therapies.

7.      Zinbryta was one of Biogen's MS therapies in 2017.

8.      Mary Brown became the Regional Director for the Northwest Region in January 2016.

9.      An Executive TBM is generally more experienced than a Senior TBM, and a Senior TBM is generally more experienced than a TBM.

10.     In March 2016, Biogen hired Senior TBM Gary Huffman, and in April 2016, Biogen hired TBM Kathryn Barth.

11.     The Northwest is within the West Division and covers Washington, Oregon, Idaho, and Alaska.

12.     Zac Allison became the West Division General Manager in September 2017.

13.     In the fall of 2017/winter of 2018, the Northwest Region had a total of 10 TBMs.

14.     Four TBMs were based in the Seattle/Tacoma area. They were Plaintiff, Sr. TBM; James Lykins, Executive TBM; Sarah Lenoue, Senior TBM; and Matt Chapman.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

15. Mr. Chapman has many years of experience in the biopharmaceutical industry.

16. Plaintiff and Lenoue are friends who have known each other for many years.

17. One of the ways in which Brown assessed her TBMs was to observe them in the field. Brown created Field Coaching Reports (FCR) containing notes of her observations. The lone "developing" comment that Brown noted for Chapman did not relate to the RIF or to the competency Customer-Focused Selling. That lone "developing" comment that Brown made in an FCR regarding Chapman was made only a few weeks after Chapman started working in the field at Biogen and only about ten weeks after he started the job.

18. Biogen works with a consulting firm, ZS Associates, to evaluate its business needs of the company's regions and territories in order to determine ways to best meet business objectives. In 2017, Biogen consulted with ZS Associates for this purpose.

19. ZS Associates made recommendations to Biogen for how best to achieve its goals for the Northwest Region, and that included a realignment, which in turn meant reducing the Seattle-Tacoma area TBMs from four to three.

20. The process involved first evaluating the four TBMs' annual performance rating scores, or OPR, for 2016 and 2017. If no TBM was lower than others, the next step was for Brown to compare the four TBMs in three Functional and Behavior Competencies selected at the corporate level: (1) Territory and Account Planning; (2) Customer-Focused Selling; and (3) Sales Disposition.

21. The competency analysis is completely separate from the annual performance review and OPR evaluation, which rating is based each employee's

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

performance over the prior twelve months and whether the employee achieved their specific performance goals. The competency assessment process during the RIF required a forward-looking analysis of the TBMs' competencies to assess which employees would be retained.

22.    Biogen does not have a written policy regarding RIFs, nor a specific process.  Thus, the company did not deviate from any policy or process in using the Functional and Behavioral Competences as part of the selection for the RIF. No policy or practice required Brown to seek "stakeholder feedback" in the RIF evaluation.

23.    Brown did not choose the competencies, structure or framework for the RIF, nor was she involved in the decision to conduct a RIF.

24.    With respect to the Competencies, Brown rated Lenoue and Lykins identically, and she rated Chapman slightly above Plaintiff. This resulted in Plaintiff receiving the lowest score of four, which in turn resulted in her being selected for lay off.

25.    In Brown's judgment, Plaintiff was less competent than her peers in the area of Customer-Focused selling.  Allison shared this view based on his interactions with the four Seattle-Tacoma area TBMs.

26.    Brown was the primary decision maker as to which TBM should be laid off, but Allison supported her decision to select Plaintiff.

27.    Plaintiff was not identified for selection in the RIF by late January 2018 by Brown and Allison. Zac Allison's January 2018 talent assessment in which he identified Plaintiff as a bottom performer was unconnected to the RIF, and Brown was not aware of Allison's assessment of Plaintiff as a bottom performer at any time before Plaintiff's layoff. Brown only learned of Allison's assessment during the course of this litigation.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

28.    Brown's text message to Allison regarding not wanting to "expose" herself did not relate to Brown's decision to select Plaintiff for RIF.  The context of that text message shows Brown striving for fairness and consistency regarding compensation for her TBMs in view of their similar rating and not wanting to appear unfair.

29.    Plaintiff subjectively believes that Biogen should have chosen Chapman instead of her for layoff. Chapman's and Plaintiff's 2017 OPRs show that overall, Chapman's sales numbers for 2017 were as good or better than Plaintiff's for that year, which was Chapman's first year with the company. Chapman has received positive ratings on his performance evaluations throughout his employment with Biogen.

30.    Palacio did not "ratify" the decision to select Plaintiff for reduction in force. That decision was made by Brown and approved by Allison.

31.    The only medical condition Plaintiff claims constitutes a disability is migraines.

32.    Plaintiff's migraine condition does not constitute an actual disability for her.

33.    Biogen never perceived Plaintiff to be disabled. Her condition is transitory and minor.

34.    Plaintiff's migraines did not affect her work in any material way.

33.    Plaintiff was sincerely grateful for Brown's help, and Plaintiff expressed that gratitude in texts messages to Brown the next morning.

34.    At a company event where strobe lights were bothering Plaintiff, Brown suggested that Plaintiff could sit away from the lights. Plaintiff rejected Brown's suggestion.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

35.     Plaintiff did not experience a migraine or miss work because of a migraine between September 5, 2017, and March 20, 2018, when she was informed of her lay off.

36.     Throughout her employment, Plaintiff made no accommodation requests to Biogen or to Brown specifically relating to migraines, never asked to be relieved of any duties, and rarely called in sick.

37.     Biogen never demoted Plaintiff, transferred Plaintiff against her will, or gave her unreasonable work assignments.   Biogen never decreased Plaintiff's compensation or altered her job duties.

38.     Brown showed exceptional empathy and compassion for Plaintiff during the September 5, 2017 migraine incident that Plaintiff experienced.   Brown herself has experience with migraines, and had nothing but empathy for Plaintiff's situation.

39.     Brown had a single conversation with one of Plaintiff's co-workers, Jim Lykins, about Plaintiff having a migraine.   Lykins, not Brown, initiated that conversation by asking about Plaintiff out of concern for her well-being. Brown immediately informed Lykins that it was not an appropriate topic of conversation, and the two never discussed the matter again.

35.     Plaintiff's good friend and co-worker Lenoue overheard part of the conversation between Lykins and Brown, but she did not hear anything that Brown said, and it was the only time Lenoue is aware of Brown being involved in a discussion in which Plaintiff's migraines were mentioned.

36.     Brown did not question Plaintiff about her migraines.

37.     Brown never displayed any form of animosity, anger, dissatisfaction, or frustration with Plaintiff regarding Plaintiff's migraine condition. Brown never made any negative or disparaging comments about Plaintiff's migraine condition.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

38.   Brown never asked Lykins or any other employee of Biogen about Plaintiff's migraines.

39.   Brown believed that Plaintiff's migraines had no impact on her ability to perform her job, and Brown never believed or stated otherwise.

40.   The only materially adverse action Plaintiff experienced was her lay off.

41.   Plaintiff's migraine(s) played no role in Brown's decision to select Plaintiff for layoff.

42.   Plaintiff told others that air travel was a trigger for her migraines.

43.   Plaintiff did not complain to Biogen about disability discrimination.

44.   Any alleged complaints about Brown discussing her migraine condition played no role in Biogen's decision to lay off Plaintiff.

45.   The field sales team in the Northwest Region was predominantly male when Brown became the Regional Director in 2016.

46.   Brown treated men and women equally in every respect.

47.   Brown did not favor men over women.  To the contrary, Brown treated all of her team members equally. Brown supported women a great deal in her region, including helping them apply for and obtain promotional opportunities. Brown encouraged and involved her female team members, including participating in promotions female TBMs sought.

48.   Volkmann did not tell Allison that Brown favored men. Nor did Volkmann tell Allison that Plaintiff came to Volkmann to complain about alleged male favoritism.

49.   Brown held Plaintiff to the same performance standards she held her male subordinates to.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

50.     Biogen compensated Plaintiff comparably to her peers, regardless of gender. Plaintiff was more highly compensated than Chapman.

51.     When Brown was comparing the four Seattle-Tacoma area TBMs for purposes of the layoff, she rated both a man (Lykins) and a woman (Lenoue) equally with the highest rating among the four.

52.     Biogen did not replace Plaintiff.

53.     Plaintiff's subjective belief that Brown favored men played no role in Brown's decision to select Plaintiff for layoff.

54.     Brown did not know Plaintiff had expressed an opinion that Brown favored men.

55.     Volkmann did not tell Allison that Brown favored men.  He told Allison that Brown could support her female colleagues better.

56.     Allison informed Brown that there was a perception that she favored men, but Allison did not inform Brown that it was Plaintiff or any other specific employee who had that perception.

57.     When Brown was deciding which TBM to select for layoff, she did not know that Plaintiff had ever held or expressed the opinion that Brown favored men.

58.     Off-label prescribing and use are distinct from "off-label promotion" or "off-label marketing," which refers to a company promoting a drug for an unapproved use.

59.     Biogen paid only one sales commission for a Zinbryta prescription in the Northwest Region in the fourth quarter of 2017. That was for an on-label prescription written by a neurologist in Alaska, Dr. Wayne Downs.

60.     No Biogen employee ever promoted or marketed Zinbryta for an off-label use in any way.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

61.     In September 2017 Biogen received a Zinbryta enrollment form for a non-MS patient from a hematologist in Olympia. Before writing the prescription, the doctor never contacted Lykins, Erickson, or any other Biogen TBM to discuss the prescription or met with any sales representatives from Plaintiff's region.

62.     This was a prescription for an off-label use because the Food and Drug Administration (FDA) approved Zinbryta for the treatment of MS.

63.     The patient in question had already received permission from the patient's insurance company, an agent of Medicare, to receive Zinbryta for treatment of anemia.

64.     Plaintiff knew that the anemia patient had already been approved for Zinbryta.

65.     Biogen's Patient Services asked Lykins to provide the prescribing doctor a Zinbryta Start Form to facilitate the doctor's obtaining the medication for the patient.

66.     Mr. Lykins provided the form to the doctor's office. He never spoke to or interacted directly with the doctor and never promoted the prescription to anyone in the doctor's office.

67.     Biogen did not submit a false claim to the government or otherwise commit fraud relating to this Zinbryta prescription, and no objectively reasonable person in Plaintiff's position could have believed otherwise.

68.     Plaintiff's complaint on or about December 6, 2017, was based on her purely subjective, but objectively unsupportable beliefs.

69.     Until this lawsuit, Brown and Allison did not know that Plaintiff had submitted a complaint about alleged off-label promotion of Zinbryta.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

70.     Plaintiff relies on the same facts to support her statutory claims as she relies on to support her common law wrongful discharge claim. That claim is entirely duplicative of Plaintiff's statutory claims.

71.     Plaintiff did not engage in public-policy linked conduct under the Washington Consumer Protection Act because her complaint was purely private in nature.

72.     Even if Plaintiff's conduct in complaining about off-label Zinbryta promotion were deemed public-policy linked conduct, it played no role in any decision Biogen made.

73.     Plaintiff never heard Brown make any sort of a derogatory remark about Plaintiff.

74.     Plaintiff accuses only Brown of sex discrimination.

75.     Plaintiff never heard Brown make a derogatory remark about people with migraines or other medical conditions or about women.

76.     Brown gave the two male and two female TBMs in the Seattle-Tacoma area the same OPR scores for 2017.

77.     Physicians have discretion and are legally authorized to prescribe approved therapies for uses that the Food and Drug Administration has not authorized in the label. Off-label therapies prescribed by physicians may be lawfully used by patients.

78.     Brown, Allison, and Palacio did not decide to initiate the Field Sales reorganization that ultimately resulted in Plaintiff's lay off.

79.     In March 2018 Matt Chapman's base salary was $ 123,807.60.

80.     Plaintiff's non-compete expired in March 2019. Plaintiff entered into the non-compete agreement voluntarily. She received more than $36,000 in cash and stock in exchange. The non-compete limited Plaintiff from working in a role involving the sale of

PROPOSED PRETRIAL ORDER -25 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

MS products for 1 year.  The customer non-solicitation agreement prevented her only from soliciting customers she herself had called on at Biogen.

81.   Plaintiff has not satisfied her duty to mitigate damages.

82.   Plaintiff's gender, alleged disability, or prior complaint about the Zinbryta prescription played no role whatsoever in Brown's decision to select Plaintiff for termination.  Regardless of Plaintiff's alleged protected category or activity, Biogen would have made all of the same decisions relating to Plaintiff's employment that it made regardless of the protected category or activity.

## V.   ISSUES OF LAW

PLAINTIFF:

1.   Did the conduct, acts, and omissions of Defendant constitute disability discrimination in violation of the ADA where Defendant treating Plaintiff less favorably than her peers based upon its regarding her as being disabled, and in that Plaintiff's perceived disability was a motivating factor in her termination?

2.   Did the conduct, acts, and omissions of Defendant constitute disability discrimination in violation of the WLAD where Plaintiff's perceived disability was a substantial factor in Defendant treating plaintiff less favorably than her peers, and in that Plaintiff's perceived disability was a substantial factor in her termination?

3.   Did the conduct, acts, and omissions of Defendant constitute sex discrimination in violation of Title VII by treating plaintiff less favorably than her peers because of her sex and wrongfully terminating plaintiff because of her gender?

4.   Did the conduct, acts, and omissions of Defendant constitute sex discrimination in violation of the WLAD where Defendant treated plaintiff less favorably

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

than her peers based upon her sex, and in that Plaintiff's sex was a substantial factor in her termination?

5.      Were the conduct, acts, and omissions of Defendant of a nature that they would dissuade a reasonable person in Plaintiff's position from engaging in protected activity and constitute retaliation in violation of the ADA?

6.      Were the conduct, acts, and omissions of Defendant of a nature that they would dissuade a reasonable person in Plaintiff's position from engaging in protected activity and constitute retaliation in violation of Title VII?

7.      Were the conduct, acts, and omissions of Defendant of a nature that they would dissuade a reasonable person in Plaintiff's position from engaging in protected activity and constitute retaliation in violation of the WLAD?

8.      Did the conduct, acts, and omissions of Defendant constitute retaliation in violation of the FCA by taking adverse action against plaintiff motivated by her FCA reporting?

9.      Was Plaintiff's whistleblowing activity regarding potential fraudulent conduct a motivating factor in terminating Plaintiff's employment in violation of public policy of the state of Washington?

**DEFENDANT:**

1.      Perceived Disability: Under the ADA and WLAD, can Plaintiff prove by a preponderance of the evidence that Biogen perceived her to be disabled?

2.      ADA Disability-Based Disparate Treatment: Under the ADA, can Plaintiff prove by a preponderance of the evidence that, but for a perceived disability, Plaintiff would still be employed by Biogen?

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

3.  <u>WLAD Disability-Based Disparate Treatment:</u> Under the WLAD, can Plaintiff prove by a preponderance of the evidence that a perceived disability was a substantial motivating factor in her lay off?

4.  <u>Gender-Based Disparate Treatment:</u> Under Title VII and the WLAD, can Plaintiff prove that by a preponderance of the evidence that her gender was a substantial motivating factor in her lay off?

5.  <u>ADA Retaliation:</u> Under the ADA, can Plaintiff prove by a preponderance of the evidence that, but for alleged opposition to disability discrimination, she would still be employed by Biogen?

6.  <u>Title VII Retaliation:</u> Under Title VII, can Plaintiff prove by a preponderance of the evidence that, but for alleged opposition to gender discrimination, she would still be employed by Biogen.

7.  <u>WLAD Retaliation:</u> Under the WLAD, can Plaintiff prove by a preponderance of the evidence that alleged opposition to disability or sex discrimination was a substantial motivating factor in her layoff?

8.  <u>False Claims Act:</u> Under the False Claims Act, can Plaintiff prove by a preponderance of the evidence that she had an objectively reasonable good faith belief that Biogen defrauded the federal government?

9.  <u>False Claims Act:</u> Under the False Claims Act, can Plaintiff prove by a preponderance of the evidence that, but for her complaint of off-label promotion of Zinbryta, she would still be employed by Biogen?

10.  <u>Wrongful Discharge:</u> Can Plaintiff prove by a preponderance of the evidence that she engaged in public-policy-linked conduct and that such conduct was a significant motivating factor in Biogen's layoff decision?

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

11.    Wrongful Discharge: Even if Plaintiff proves that public policy linked conduct was a significant motivating factor in the decision to lay her off, did Biogen have an overriding justification for its decision?

12.    Bifurcation: Should the Court bifurcate the trial into liability and damages phases given that the evidence relating to liability and damages is distinct and bifurcation will be more efficient and prevent unfair prejudice?

13.    Mitigation: Did Plaintiff satisfy her obligation to use reasonable efforts to mitigate economic and non-economic damages?

14.    Title VII and ADA Same Decision Defense: Under Title VII and the ADA, did Defendant prove by a preponderance of the evidence that it would have made the same decisions affecting Plaintiff even in the absence of her ADA and Title VII protected status or activity?

15.    WLAD Same Decision Defense: Under the WLAD, did Defendant prove by clear and convincing evidence that it would have made the same decisions affecting Plaintiff even in the absence of her ADA and Title VII protected status or activity?

16.    Punitive Damages: Is there evidence of malice or reckless indifference by Biogen sufficient to permit the jury to consider punitive damages under the Title VII or for disparate treatment under ADA?

17.    Compensatory and Punitive Damages for ADA Retaliation: Is plaintiff barred from seeking compensatory and punitive damages for retaliation under the ADA given that 42 U.S.C. § 1981a and controlling Ninth Circuit law do not allow for those damages under the ADA for retaliation?

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

## VI.   EXPERT WITNESSES

A.   On behalf of Plaintiff:

| NAME & ADDRESS | WILL TESTIFY OR MAY TESTIFY | AREA OF TESTIMONY |
|---|---|---|
| Christina Tapia, Ph.D.<br>NW Economics<br>1416 NW 46th Street<br>Suite 105 – PMB 337<br>Seattle, WA 98107 | Will testify | The past and future economic damages suffered by Plaintiff. |

B.   On behalf of Defendant:

| NAME & ADDRESS | WILL TESTIFY OR MAY TESTIFY | AREA OF TESTIMONY |
|---|---|---|
| William B. Skilling Address:<br>3814 E Lee St,<br>Seattle, WA 98112<br>Phone: (206) 227-9675 | May testify | Reasonableness of plaintiff's mitigation efforts, available comparable job openings |
| Peter Nickerson<br>Address: 520 Pike St # 1200,<br>Seattle, WA 98101<br>Phone: (206) 332-0270 | Will testify | Economic damages Plaintiff alleges. |

## VII.   OTHER WITNESSES

The names and addresses of witnesses, other than experts, to be used by each

party at the time of trial and the general nature of the testimony of each are:

A.   On behalf of Plaintiff:

| NAME & ADDRESS | WILL TESTIFY OR MAY TESTIFY | AREA OF TESTIMONY |
|---|---|---|
| Danita Erickson<br>c/o Gordon Thomas Honeywell LLP<br>1201 Pacific Ave., Suite 2100<br>Tacoma, WA 98402 | Will testify | Plaintiff will testify as to her disability, abilities, actions, Defendant's wrongful conduct including acts of discrimination, fraud, retaliation, and damages. |

LAW OFFICES<br>GORDON THOMAS HONEYWELL LLP<br>1201 PACIFIC AVENUE, SUITE 2100<br>TACOMA, WASHINGTON  98402<br>(253) 620-6500  -  FACSIMILE (253) 620-6565

| NAME & ADDRESS | WILL TESTIFY OR MAY TESTIFY | AREA OF TESTIMONY |
|---|---|---|
| Katherine Scheibner (Duddy)<br>22804 East Settler Dr.<br>Liberty Lake, WA 99019-8503<br>(509) 496-2975<br>Kds34961@gmail.com | Will testify | Knowledge of Plaintiff's damages. |
| Andrea Donovan<br>30625 43rd Ave. SW<br>Federal Way, WA 98023-2132<br>(253) 230-6506<br>Andrea.donovan@iqilaw.com | Will testify | Knowledge of Plaintiff's damages. |
| Danielle Molzan<br>6717 77th Ave. Ct. NW<br>Gig Harbor, WA 98335<br>(253) 348-4345<br>daniellemolzan@gmail.com | Will testify | Knowledge of Plaintiff's damages. |
| Mary Brown<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify[5] | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |
| Zachary Allison<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify[6] | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |
| Keri Palacio<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify[7] | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |

---

[5] Plaintiff has agreed to present this witness live based on Biogen's representation that she will be made available when needed by Plaintiff. Should Biogen reneg, deposition designations were submitted and will be used instead.

[6] Plaintiff has agreed to present this witness live based on Biogen's representation that he will be made available when needed by Plaintiff. Should Biogen reneg, deposition designations were submitted and will be used instead.

PROPOSED PRETRIAL ORDER -31 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

| NAME & ADDRESS | WILL TESTIFY OR MAY TESTIFY | AREA OF TESTIMONY |
|---|---|---|
| Ryan MacLean<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will likely testify via deposition* | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |
| Sarah Lenoue<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |
| Shane Volkmann<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify | Knowledge of events giving rise to this case. |
| Kate Murphy<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify via deposition* | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |
| Michael Parran<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify via deposition* | Knowledge of events giving rise to this case and Rule 30(b)(6) topics. |
| Susan Hajek<br>2139 N. 52nd Street<br>Seattle, WA 98103<br>(206) 930-2321<br>susanhajek@hotmail.com | Will testify | Knowledge of events giving rise to this case. |

---

[7] Plaintiff has agreed to present this witness live based on Biogen's representation that she will be made available when needed by Plaintiff.  Should Biogen reneg, deposition designations were submitted and will be used instead.

PROPOSED PRETRIAL ORDER -32 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

| NAME & ADDRESS | WILL TESTIFY OR MAY TESTIFY | AREA OF TESTIMONY |
|---|---|---|
| Dr. Dennis Galvon<br>4423 Point Fosdick Dr. NW #212<br>Gig Harbor, WA 98335<br>(253) 851-8545 | Will testify | Knowledge of his treatment of Plaintiff and Plaintiff's medical and emotional condition, abilities, disabilities, and related issues; particularly with respect to emotional trauma as a result of the discrimination. |

\*Defendant objects to Plaintiff presenting testimony by deposition for any witness who is available to testify in person. Each of the witnesses Plaintiff has stated "will likely testify via deposition" is available to testify in person. Ms. Brown, Mr. Allison, and Ms. Palacio will testify in person for the defense. Defendant objects to Mr. MacLean or Mr. Parran testifying at all, and may object to Ms. Murphy testifying depending on the Court's rulings on summary judgment and motions in limine. Defendant further objects to MacLean, Parran, or Murphy testifying by deposition since Plaintiff did not designate any deposition testimony of these witnesses in compliance with LCR 16 or 32(e).

Plaintiff responds that none of these witnesses are "available" under Rule 32 to Plaintiff and it has no obligation to accept Defendant's desire to have them live. With respect to MacLean, Murphy and Parran. They were timely identified as testifying via deposition and no designations were provided since the Plaintiff planned to present their entire (and short) depositions thus no "portions" were designated.

B.   On behalf of Defendants:

| NAME AND ADDRESS | WILL TESTIFY OR POSSIBLE ONLY | AREA OF TESTIMONY |
|---|---|---|
| Mary Brown<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify | Defendant's field sales operations in the Northwest Region, communications with Biogen employees, the 2018 reduction in force, reasons for Plaintiff's lay off |

LAW OFFICES<br>GORDON THOMAS HONEYWELL LLP<br>1201 PACIFIC AVENUE, SUITE 2100<br>TACOMA, WASHINGTON 98402<br>(253) 620-6500 - FACSIMILE (253) 620-6565

| NAME AND ADDRESS | WILL TESTIFY OR POSSIBLE ONLY | AREA OF TESTIMONY |
|---|---|---|
| Zachary Allison<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify | Defendant's field sales operations in the Northwest Region, communications with Biogen employees, the 2018 reduction in force, reasons for Plaintiff's lay off |
| Keri Palacio<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify | Biogen's policies and practices relating to equal employment, non-discrimination, non-retaliation, employee training, her communications with Biogen employees, including Plaintiff |
| Sarah Lenoue<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | May testify | Her experience working at Biogen including her experience and communications with Plaintiff, Mary Brown, Zac Allison. |
| Matthew Chapman<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | Will testify | His experience working at Biogen including his experience and communications with Plaintiff, Mary Brown, Zac Allison relevant to Plaintiff's claims and Defendant's defenses |
| James Lykins<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | May testify | The off-label Zinbryta issue, his communications with Plaintiff, Brown, and other Biogen employees relevant to Plaintiff's claims and Defendant's defenses |
| Katie Barth<br>3324 Northeast Klickitat Street, Portland, Oregon, 97212 | May testify by deposition | Her experience working at Biogen, her termination, her job search, and her subsequent employment |
| Amo Cummings Nasedkin<br>Address: 3366 Chevy Chase St., Eugene, OR 97401 | Will testify | Her experience working with Mary Brown, observations about Ms. Brown's treatment of female employees. |
| Kate Murphy<br>c/o Jackson Lewis, PC<br>520 Pike Street, Suite 2300<br>Seattle, WA 98101 | May testify | The lack of a commission bonus payment for the off-label Zinbryta prescription Plaintiff complained about |
| Dr. Nicole Grous<br>420 McPhee Rd SW, Olympia, WA 98502 | May testify | Issues relating to Zinbryta Start Form about which Plaintiff complained including communications with Defendant |

PROPOSED PRETRIAL ORDER -34 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

VIII.   EXHIBITS

A.   Admissibility Stipulated

1.   Plaintiff's Exhibits

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. |
|---|---|---|---|---|
| 1. | May 23, 2018 US Corp Neuro Fld Force Northwest (Mary Brown) Organization Chart | BGN000139-140 | 2 | Yes |
| 3. | TBM Success Profile | BGN001465-1518 | 54 | Yes |
| 4. | 2017 Biogen Performance Management Process Ratings Overview | BGN001254-1268 CONFIDENTIAL | 15 | Yes |
| 6. | April 2017 Non-Discrimination and Non-Harassment Policy | BGN000787-791 | 5 | Yes |
| 8. | April 23, 2018 Biogen Global Investigations Protocol | BGN001063-1071 | 9 | Yes |
| 10. | Starting your Patients on ZINBRYTA (daclizumab): Instructions for Healthcare Professionals | DE_001209-1211; DE_001213-1217 | 8 | Yes |
| 11. | ZINBRYTA START Form | DE_001212 | 1 | Yes |
| 12. | Understanding your Zinbryta START Form Goals | BGN_ESI_000230 | 1 | Yes |
| 13. | Sept. 15, 2017 - Oct. 9, 2017 Email chain between Hooper and Lykins RE: REMS ID | BGN_ESI_000739-741 CONFIDENTIAL | 2 | Yes |
| 14. | Sept. 14, 2017 Email between Hooper and Lykins RE: DISPO | BGN_ESI000522-526 | 5 | Yes |
| 15. | Sept. 5, 2017 Screenshot of Dispo (CCS) Patient Disposition | DE_001218-1220 | 3 | Yes |
| 17. | Sept. 18, 2017 Email between Lykins and Brown RE: of note (Zinbryta START) | BGN_ESI_000724 | 1 | Yes |
| 18. | Nov. 16, 2017 Text messages between Erickson, Lykins and Brown | BGN001704 | 1 | Yes |

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 · FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. |
|---|---|---|---|---|
| 19. | Nov. 13, 2017<br>Emails between Allison and Brown RE: Sea/Tac trip itinerary and information | BGN_ESI_000547-549<br>CONFIDENTIAL | 3 | Yes |
| 21. | Dec. 1, 2017<br>Email from CEO Michel Vounatsos RE: Biogen's Commitment to Non-Discrimination and Non-Harassment | DE_000184 | 1 | Yes |
| 22. | Dec. 4, 2017<br>Email from Brown to NW Team RE: QTD Attainment | DE_000185-186 | 2 | Yes |
| 25. | Dec. 7, 2017<br>Fax from Dr. Nicole Grous to Biogen, Subject: Zinbryta PA Approval, Exp. 12/31/18 | BGN001726-1735<br>CONFIDENTIAL | 10 | Yes |
| 26. | Jan. 19, 2018<br>Email from Erickson to Palacio RE: Confidential | BGN_ESI_04245 | 1 | Yes |
| 29. | Danita Erickson 2017 Mid-Year Review | DE_001949-1953 | 5 | Yes |
| 30. | Danita Erickson 2017 Year-End Performance Management Review | DE_1942-1948 | 7 | Yes |
| 31. | Oct. 16, 2017 – Jan. 30, 2018<br>Text messages between Allison and Brown | BGN0001746-1754 | 9 | Yes |
| 33. | Reduction in Force Selection Template: Seattle Area – (Tab: HR Assessment of excel spreadsheet) | BGN000143<br>CONFIDENTIAL | 6 | Yes |
| 34. | Map of West Region | BGN000212 | 1 | Yes |
| 36. | June 17, 2017<br>Biogen Divisional GM Org Changes – "Draft" | BGN002734-2737 | 4 | Yes |
| 44. | Feb. 27, 2018<br>Palacio email to Erickson RE: Year End Reviews | BGN_ESI_004233-4234 | 2 | Yes |
| 45. | Feb. 28, 2018<br>Palacio email to Lewis RE: Confidential: TA Help | BGN_ESI_001893 | 1 | Yes |
| 47. | Redacted FCR Details – Brown Excel Spreadsheet (FRE 1006 Summary) | BGN000200<br>CONFIDENTIAL | 16 | Yes |

LAW OFFICES<br>GORDON THOMAS HONEYWELL LLP<br>1201 PACIFIC AVENUE, SUITE 2100<br>TACOMA, WASHINGTON  98402<br>(253) 620-6500  ·  FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. |
|---|---|---|---|---|
| 48. | Feb. 20, 2018 Billet email to Brown RE: Q 4 Scorecard for Tacoma/NW | BGN0001568-1570 CONFIDENTIAL | 3 | Yes |
| 49. | July 24, 2019 Declaration of Todd Billet with Exs. | Dkt. 73 | 11 | Yes |
| 50. | July 13, 2018 Erickson Pay Statement | BGN001042-1053 | 6 | Yes |
| 53. | Nov. 3, 2015 Retention Award, Non-compete and Non-Solicitation Agreement | BGN000085-89 | 5 | Yes |
| 55. | April 3, 2018 Biogen – Erickson statement of earnings – Zinbryta Bonus payout | DE_000277 | 1 | Yes |
| 57. | Danita Erickson Resume | DE_000808-809 | 2 | Yes |
| 58. | Feb. 15, 2018 Territory Proposals (Select Pages) | BGN000848; BGN000850; BGN000901-907; BGN000910; BGN000914 CONFIDENTIAL | 11 | Yes |

2. Defendant's Exhibits

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. |
|---|---|---|---|---|
| A-1 | Guidance on Appropriate Commercial/Medical Interactions 7/2016 | Palacio Dep Ex 53 | 14 | Yes |
| A-2 | Lykins email to Felicia Kelley & Plaintiff regarding Zinbryta Patient in Olympia 11/17/17 | BGN_ESI_ 000748- BGN_ESI_ 000749 CONFIDENTIAL | 2 | Yes |
| A-12 | Lykins 2017 Year End Review | BGN000328- BGN000331 CONFIDENTIAL | 4 | Yes |
| A-13 | Chapman 2017 Year End Performance Review | BGN001099- BGN001104 CONFIDENTIAL | 6 | Yes |

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. |
|-----|-------------|--------------|-----------|------------------|
| A-14 | Lenoue 2017 Year End Review | BGN001165-BGN001173 CONFIDENTIAL | 11 | Yes |
| A-15 | Biogen's Code of Business Conduct [FULL] | BGN000792-BGN000847 | 56 | Yes |
| A-16 | Plaintiff's Code of Business Conduct Acknowledgement 9/4/11 | BGN000084 | 1 | Yes |
| A-20 | Plaintiff's Resume 2018 | DE_000767-DE_000768 | 2 | Yes |
| A-21 | Plaintiff's LinkedIn Profile as of May 2019 | NO Bates No. | 4 | Yes |
| A-23 | Compensation Summary for Plaintiff | BGN000007 | 1 | Yes |
| A-25 | Email from Palacio to Plaintiff 1/19/18 | BGN_ESI_ 004246 | 1 | Yes |
| A-26 | Calendar Note for call between Palacio and Plaintiff 1/22/18 | BGN_ESI_ 004271 | 1 | Yes |
| A-27 | Calendar Note for call between Palacio and Plaintiff 2/9/18 | BGN_ESI_ 004433 | 1 | Yes |

B.   Authenticity Stipulated, Admissibility Disputed

   1.   Plaintiff's Exhibits

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|-----|-------------|--------------|-----------|------------------|-----------|
| 5. | March 2018 Performance Management: Management Guidelines and Documentation Skills (14 pages from Doc.) | BGN_ESI_002063-2067; BGN_ESI_002074-2083 | 14 pages of 43 | Yes | FRE 106 |
| 7. | Accountability Model Biogen's Approach to Corrective Actions | BGN001454-1464 | 11 | Yes | FRE 401-02 |
| 9. | Sept. 5, 2017 - Sept. 22, 2017 Text messages between Erickson and Brown | BGN001529 | 1 | Yes | FRE 106 |

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| 16. | Aug. 30, 2017 – Oct. 27, 2017 Text messages between Erickson, Lykins and Brown | BGN001700 | 1 | Yes | FRE 106 |
| 20. | ZA Survey Raw Data - 2017 Q4 Pulse, 2018 Comments, Responses and Questions (PDF of Spreadsheet) | BGN001580 | 21 | Yes | FRE 106, 401-403 |
| 24. | July 2017 to March 2018 Biogen MS Historical SFs (Spreadsheet - Filtered ZINBRYTA data only – FRE 1006 Summary) | BGN002440 CONFIDENTIAL | 1 | Yes | FRE 401-403 |
| 27. | Jan. 1, 2018 Allison email to Ide RE: West Division Business Plan and specific pages from Business Plan | BGN_ESI_00917; BGN_ESI_000919; BGN-ESI_000921; BGN_ESI_1023-1024 CONFIDENTIAL | 5 | Yes | FRE 401-403 |
| 28. | Jan. 23, 2018 Email from Lenoue to Erickson ER: Print-Marketing list of materials for STEM | BGN_ESI_001169-1170 CONFIDENTIAL | 2 | Yes | FRE 401-403 |
| 32. | May 31, 2018 Core Team List (one page from Doc.) | BGN000155 CONFIDENTIAL | 1 page of 55 | Yes | FRE 401-403, 106 |
| 35. | Reduction in Force Selection Template: NW Region – (Tab: HR Assessment of excel spreadsheet) | BGN002415 CONFIDENTIAL | 4 | Yes | FRE 401-403 |
| 37. | West Division TBM Calibration Excel Spreadsheet – (Tab: West – TBMs – FRE 1006 Summary) | BGN002699 CONFIDENTIAL | 1 | Yes | FRE 401-403, 106 |

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| 38. | West Division TBM Calibration Excel Spreadsheet – (Tab: WHAT Rating Definitions of Spreadsheet) | BGN002699<br>CONFIDENTIAL | 1 | Yes | FRE 401-403, 106 |
| 39. | West Division TBM Calibration Excel Spreadsheet – (Tab: HOW Rating Definitions of Spreadsheet) | BGN002699<br>CONFIDENTIAL | 1 | Yes | FRE 401-403, 106 |
| 40. | January 2018 Biogen Coaching Style Matrix Tool (pp. 7-8 of Doc.) | BGN_ESI_003932-3933<br>CONFIDENTIAL | 2 pages of 8 | Yes | FRE 401-403, 106 |
| 41. | Role Differentiators (pp. 10-11 of Doc.) | BGN_ESI_003572-3573<br>CONFIDENTIAL | 2 pages of 13 | Yes | FRE 401-403, 106 |
| 42. | Promotions: Role Differentiators (pp. 3-4 of Doc.) | BGN_ESI_003636-3637<br>CONFIDENTIAL | 2 pages of 11 | Yes | FRE 401-403, 106 |
| 43. | Feb. 5, 2018 Emails between Brown and Erickson RE: VA/DOD abnormalities | BGN_ESI_001055-1060<br>CONFIDENTIAL | 6 | Yes | FRE 401-403, 106 |
| 46. | March 4, 2018 Palacio email to Bowen | BGN_ESI_001945 | 1 | Yes | FRE 401-403 |
| 51. | Feb. 27, 2019 – April 3, 2018 Text Messages between Brown and Erickson RE: RIF | DE_000158-161 | 4 | Yes | FRE 106 |
| 54. | July 30, 2018 – Aug. 1, 2018 Text messages between Lykins and Brown | BGN001654 | 1 | Yes | FRE 401-403 |
| 56. | May 8, 2018 Legowik email RE: Legal Hold Issued: Danita Erickson Legal Hold | BGN002774-2778<br>CONFIDENTIAL | 5 | Yes | FRE 401-403 |
| 59. | January 3, 2018 Erickson email to Curto RE Add'l Docs | DE_000223;<br>DE_000227 | 2 | Yes | FRE 106, 502, 801-802 |

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 · FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| 60. | Dec. 11, 2017 Brown email re - QTD Attainment DE_000204-205 | DE_000204-205 | 2 | Yes | FRE 801-802 |
| 61. | Dec. 11, 2017 Lykins text re Zin start form DE_000201 | DE_000201 | 1 | Yes | FRE 801-802 |
| 62. | Dec. 18, 2017 Brown email re NW QTD Attainment DE_000211-212 | DE_000211-212 | 2 | Yes | FRE 801-802 |
| 63. | Feb. 13, 2018 Palacio Dep. Exh. 52 | BGN_ESI_001485-1492 | 8 | Yes | FRE 801-802 |
| 65. | Biogen 2016-2018 Financial Statements from Annual Report | F2-F3 | 2 | Yes | FRE 401-403 FRCP 26(a)(1), FRCP 37 |
| 66. | Biogen 2018 Annual Report to Shareholders | | 218 | Yes | FRE 401-403 FRCP 26(a)(1), FRCP 37 |

2.     Defendant's Exhibits

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| A-3 | Text messages between Plaintiff and Lykins 1/14/16 – 2/22/18 [FULL] | BGN001683-BGN001707 | 25 | Yes | FRE 401-403, 801, 802 |
| A-4 | Text messages between Plaintiff and Lykins 8/8/17-4/2/18 | BGN001536-BGN001567 | 32 | Yes | FRE 401-403, 801, 802 |
| A-5 | Text messages between Plaintiff and Lykins 10/9/17 – 3/23/18 | DE_000070-DE_000130 | 61 | Yes | FRE 401-403, 801, 802 |
| A-6 | Text messages between Plaintiff and Brown [FULL] 4/21/17 – 5/8/18 | BGN001524-BGN001535 | 12 | Yes | FRE 401-403, 801, 802 |

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| A-7 | Text messages between Plaintiff and Brown [FULL] 10/9/17 – 4/3/18 | DE_000150-DE_000161 | 12 | Yes | FRE 401-403, 801, 802 |
| A-8 | Text messages between Brown, Chapman, Lenoue 9/6/18 | BGN001647 | 1 | Yes | FRE 401-403, 801, 802 |
| A-10 | Email from Dell Faulkingham re Evolution of our Customer Facing Model 3/20/18 | DE_000268-DE_000269 | 2 | Yes | FRE 401-403, 801, 802 |
| A-11 | Faulkingham email re reorganization 3/23/18 | BGN_ESI_4161 | 2 | Yes | FRE 401-403, 801, 802 |
| A-17 | Plaintiff email to Brown withdrawing application for IRAM position 12/7/16 | DE_001349-DE_001350 | 2 | Yes | FRE 401-403, 801, 802 |
| A-18 | Palacio email to Cashman re scheduling of STEM Healthcare interviews 12/20/17 | BGN001591-BGN001600 | 10 | Yes | FRE 401-403, 801, 802 |
| A-19 | Faulkingham email re STEM Healthcare interviews 1/10/18 | BGN_ESI_003859-BGN_ESI_003860 | 2 | Yes | FRE 401-403, 801, 802 |
| A-22 | Kathryn J. Barth resume | BGN000611-BGN000612 | 2 | Yes | FRE 401-403, 801, 802 |
| A-24 | Compensation Summary for Chapman | BGN001077 CONFIDENTIAL | 1 | Yes | FRE 401-403, 801, 802 |
| A-28 | Plaintiff's medical records from Dr. Galvon 5/28/13 – 7/31/19 | GALVON-DE000001-GALVON-DE000094 CONFIDENTIAL | 94 | Yes | FRE 401-403, 801, 802 |

PROPOSED PRETRIAL ORDER -42 of 46
(2:18-cv-01029-JCC)
[4848-0341-4441]

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| A-29 | Plaintiff's 2017 W2 | DE_000045 | 1 | Yes | FRE 106, 401-403 |
| A-30 | Separation Agreement offered to Plaintiff dated March 2018 (without Ex. A) | DE_001890-97 | 8 | Yes | FRE 106, 401-403, 408 |
| A-31 | Brown FCRs for NW TBMs from 2017-18 | BGN 200 | 12 | Yes | FRE 401-403 |
| A-32 | September 18, 2017 Emails between Lykins, Hajek, Plaintiff, Brown re Zinbryta start form [partially unredacted] | BGN_ESI_000724 | 1 | Yes | FRE 403, FRCP 26(a)(1), FRCP 37 |

C.   Authenticity and Admissibility Disputed

    1.   Plaintiffs' Exhibits

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| 23. | Dec. 6, 2017 EthicsPoint – Biogen Report Submission | DE_000188-192 | 5 | Yes | FRE 403, 801, 802, 901 |
| 64 | Dec. 6, 2017 EthicsPoint – Biogen Report Submission | | 1 | Yes | FRE 106, 801, 802, 901, FRCP 26(a)(1), FRCP 37 |

    2.   Defendant's Exhibits

| EXH | DESCRIPTION | BATES NUMBER | # OF PAGES | ELECTR. PRESENT. | OBJECTION |
|---|---|---|---|---|---|
| A-9 | Text messages between Lenoue, Chapman, Lykins, Maureen, and Plaintiff | BGN001643-BGN001644 | 2 | Yes | FRE 401-403, 801, 802, 901 |

## IX.   ACTION BY THE COURT

a) This case is scheduled for trial before a jury on October 28, 2019 at 9:30 a.m.

b) Trial briefs shall be submitted to the Court on or before October 24, 2019.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

c) Jury instructions requested by either party shall be submitted to the Court on or before October 24, 2019. Suggested questions of either party to be asked of the jury by the Court on voir dire shall be submitted to the court on or before October 24, 2019.

This Order has been approved by the parties as evidenced by the signatures of their counsel. This Order shall control the subsequent course of the action unless modified by a subsequent order. This Order shall not be amended except by order of the Court pursuant to agreement of the parties or to prevent manifest injustice.

Dated this 23 day of October, 2019.

_____
The Honorable John C. Coughenour

Presented By:

GORDON THOMAS HONEYWELL LLP

By  /s/ Stephanie Bloomfield
Stephanie Bloomfield, WSBA No. 24251
sbloomfield@gth-law.com
James W. Beck, WSBA No. 34208
jbeck@gth-law.com
Janelle Chase-Fazio, WSBA No. 51254
jchasefazio@gth-law.com
Attorneys for Plaintiff

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

JACKSON LEWIS P.C.


By: /s/ Michael Griffin
Michael Griffin, WSBA #29103
Paul V. Kelly, pro hac vice
Sarah W. Walch, pro hac vice
michael.griffin@jacksonlewis.com
paul.kelly@jacksonlewis.com
sarah.walsh@jacksonlewis.com
Attorneys for Defendant

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565

CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Mike Griffin, WSBA No. 29103
Jackson Lewis PC
Paul V. Kelly, pro hac vice
Sarah W. Walch, pro hac vice
520 Pike Street, Ste. 2300
Seattle, WA  98101
(206) 626-6416 direct
Michael.griffin@jacksonlewis.com
Heather.Adams@jacksonlewis.com
Sarah.walsh@jacksonlewis.com
Paul.kelly@jacksonlewis.com
Ross.merritt@jacksonlewis.com
*Counsel for Defendant*

/s/ Tracie Zumach
Tracie Zumach, Paralegal
TZumach@gth-law.com
Gordon Thomas Honeywell LLP

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  ·  FACSIMILE (253) 620-6565