THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANITA ERICKSON,

                              Plaintiff,

        v.

BIOGEN, INC.,

                              Defendant.

CASE NO. C18-1029-JCC

ORDER

This matter comes before the Court on Defendant's renewed motion for judgment as a matter of law or, in the alterative, for a new trial or to amend the judgment (Dkt. No. 178) and Plaintiff's motion to amend the judgment and for attorney fees (Dkt. No. 160). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Defendant's motion (Dkt. No. 178) and GRANTS in part and DENIES in part Plaintiff's motion (Dkt. No. 160) for the reasons explained herein.

## I.    BACKGROUND

The Court has set forth the facts of the case in a prior order and does not repeat them here. (*See* Dkt. No. 93.) On November 6, 2019, the jury rendered a verdict for Plaintiff on her claims for Title VII sex discrimination and retaliation, Washington Law Against Discrimination ("WLAD") gender discrimination and retaliation, False Claims Act ("FCA") retaliation, and

wrongful termination in violation of public policy under state law. (*See* Dkt. No. 158.) Plaintiff's expert, Dr. Christina Tapia, testified that Defendant had caused Plaintiff $2,534,222 in economic damages. (Dkt. No. 186 at 72.) The jury awarded Plaintiff $2,534,222 in economic damages, consisting of $390,500 in past economic damages and $2,143,722 in future economic damages. (*See* Dkt. No. 158.) The jury also awarded Plaintiff $1,690,000 in non-economic damages and $1,690,000 in punitive damages, which brought the total award to $5,914.222. (*Id.*) Defendant now renews its motion for judgment as a matter of law or, in the alterative, for a new trial or to amend the judgment. (Dkt. No. 178.) Plaintiff moves to amend the judgment and for attorney fees, costs, prejudgment interest, and a tax gross up. (Dkt. No. 160.)

## II.   DISCUSSION

### A.   Defendant's Motion for Judgment as a Matter of Law

"Jury verdicts are due considerable deference." *Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 775 (9th Cir. 1990). In a renewed motion for judgment as a matter of law under Rule 50(b), "[t]he test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). When applying this test, courts "must view the evidence in the light most favorable to the nonmoving party." *Id.*

Defendant moved for judgment as a matter of law during trial, (Dkt. No. 139), and now moves to renew its motion, (Dkt. No. 178). Defendant first argues that the jury erred in finding that Defendant discriminated against Plaintiff on the basis of sex, contending that there was an absence of evidence presented at trial of overt sexism or pay disparities. (Dkt. No. 178 at 3.) Defendant also contends that Plaintiff received similar opportunities compared to her male colleagues and that Mary Brown, Plaintiff's manager, had no animus toward her and took no materially adverse action toward her prior to Plaintiff's discharge. (*Id.*) But the trial transcript shows that multiples witnesses, including Sarah Lenoue and Shane Volkmann, corroborated Plaintiff's testimony that Brown treated men more favorably than women. (*See* Dkt. No. 186 at

75, 77, 79, 107–20.) Thus, there was sufficient evidence presented at trial from which a reasonable jury could conclude that Defendant wrongfully terminated Plaintiff on the basis of sex.

Second, Defendant argues that the jury erred in finding that Defendant retaliated against Plaintiff for reporting sex discrimination. (Dkt. No. 178 at 3–4.)  Defendant primarily relies on Brown's testimony that she was unaware of Plaintiff's report. (*See id.* at 4.) But Plaintiff presented evidence that there were three employees involved in the decision to terminate Plaintiff and that at least two of them, Zac Allison and Keri Palacio, were aware of Plaintiff's report before Defendant decided to terminate Plaintiff. (Dkt. No. 186 at 84–93.) Based on that evidence, plus the timing of Plaintiff's discharge shortly after her report, the jury could reasonably infer that Plaintiff was fired because of her reports.

Third, Defendant argues that the jury erred in finding that Defendant retaliated against Plaintiff for reporting evidence of potential violations of the FCA, contending that there was no objective basis for Plaintiff to believe there was an attempt to defraud the government. (Dkt. No. 178 at 4.)  To prove she was engaged in protected activity, Plaintiff must show she was "investigating matters which are calculated, or reasonably could lead, to a viable [FCA] action." *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). Plaintiff presented evidence at trial that (1) she knew that her colleague Jim Lykins had attempted to secure a Zinbryta START form for a Medicare patient, (2) the START form that Lykins provided to the physician were pre-filled with a diagnosis code for multiple sclerosis, and (3) Defendant used these forms to determine whether a sale triggered a commission for the sales representatives. (Dkt. Nos. 186 at 58, 105–06; 188 at 2–11.) This evidence was sufficient for Plaintiff to reasonably believe that an employee was pursuing an off-label sale in violation of the FCA. *See Moore*, 275 F.3d at 845. Based on that evidence, plus the timing of Plaintiff's discharge shortly after her FCA complaint, the jury could reasonably infer that Plaintiff was fired because of her reports.

1    Thus, Defendant has not demonstrated that the "evidence permits only one reasonable

2    conclusion, and that conclusion is contrary to the jury's verdict." *See Josephs*, 443 F.3d at 1062.

3    Therefore, Defendant's request for judgment as a matter of law (Dkt. No. 178) is DENIED.

4    **B.    Defendant's Motion for a New Trial**

5        The Court has considerable discretion to grant a new trial "for any reason for which a

6    new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P.

7    59(a)(1)(A). A new trial is appropriate "if the verdict is contrary to the clear weight of the

8    evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice," such

9    as when damages are excessive, or the trial was not fair to the moving party. *Molski v. M.J.*

10   *Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson*

11   *Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). An error regarding the admissibility of

12   evidence does not necessitate a new trial "[u]nless justice requires otherwise." Fed. R. Civ. P. 61;

13   *see Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940) (explaining that substantial

14   errors in admission or rejection of evidence could require a new trial).

15       Defendant argues that the trial was not fair because several of the Court's rulings unfairly

16   prejudiced Defendant. (Dkt. No. 178 at 5–7.) First, Defendant argues that it was unfairly

17   prejudicial to admit its financial information (Trial Exhibit 65), which showed Defendant's total

18   annual global revenue was in the billions of dollars. Defendant argues that this had an

19   insurmountably and unfairly prejudicial effect on the jury. But in support of its argument,

20   Defendant cites only the verdict, which Defendant contends is excessive. (Dkt. No. 178 at 5.)

21   Second, Defendant argues that the Court should have dismissed the state law claims and that

22   allowing them to proceed may have confused the jury as to the burden of proof. But the jury's

23   only question during deliberations astutely clarified the burden of proof for one of the claims,

24   and Defendant does not point to any other purported evidence of jury confusion. (*See* Dkt. Nos.

25   153, 154.)

26       Third, Defendant argues that it was prejudiced when the Court excluded two documents,

ORDER
C18-1029-JCC
PAGE - 4

a pair of Zinbryta START forms signed by Dr. Wayne Downs, including one dated November 28, 2017. Defendant contends that *this* START form—not the one about which Plaintiff filed her FCA complaint—properly triggered a fourth quarter sales bonus and that Plaintiff thus had no reasonable basis to suspect an FCA violation. (*See* Dkt. No. 178 at 6.) But as Plaintiff points out, Brown sent an email on November 25, 2017, congratulating the team on meeting its fourth quarter Zinbryta sales quota. (*See* Dkt. No. 185 at 11.) This was three days before Dr. Downs even signed his Zinbryta START form. Thus, the excluded exhibits likely could not have undermined proof of Plaintiff's reasonable suspicion that there was off-label sales activity in violation of the FCA. Furthermore, Defendant did not reveal these apparently responsive documents during discovery, nor did it list them as exhibits in the proposed pretrial order, instead disclosing them to Plaintiff on the eve of the last full day of trial. (*See* Dkt. Nos. 95, 134.) To the extent that Defendant was prejudiced by exclusion of the documents, it was not unfair prejudice. *See* Fed. R. Civ. P. 37(c) (prohibiting a party from using at trial information from documents not previously disclosed, unless the failure was substantially justified or is harmless).

Fourth, Defendant argues that the Court unfairly precluded Defendant from calling a rebuttal witness, Wes Millard, whose testimony could have directly contradicted Plaintiff's testimony regarding her overall sales competence and could have described Plaintiff's lack of professionalism towards male subordinates. Millard was not listed as a witness in the pretrial order. (*See* Dkt. No. 95.) Defense counsel elicited Plaintiff's testimony about Millard, therefore he could not be properly considered a rebuttal witness. (*See* Dkt. No. 134.) Furthermore, the jury heard ample testimony from more than a dozen other witnesses about Plaintiff's character, competence, and interaction with males during the time frame at issue. Millard allegedly worked with Plaintiff three years earlier, and his testimony would have been cumulative and of limited relevance. Therefore, excluding Millard as a witness was not unfairly prejudicial.

Thus, Defendant has not demonstrated that the Court's rulings unfairly prejudiced Defendant, that the verdict was against the clear weight of the evidence, or that the trial was so

unfair to Defendant as to be a miscarriage of justice. *See Molski*, 481 F.3d at 729. Therefore, Defendant's request for a new trial (Dkt. No. 178) is DENIED.

**C.      Defendant's Motion to Amend the Judgment or for a New Trial on Damages**

A jury award should be upheld "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). Under Federal Rule of Civil Procedure 59(a), if a district court determines that the damage award is excessive, it may deny a motion for a new trial, conditioned on plaintiff's acceptance of a remittitur. *See Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).

1.   *Front Pay*

The purpose of an award of front pay is to make a victim of discrimination or retaliation whole, but this must be tempered by what she could earn using reasonable mitigation efforts. *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1157 (9th Cir. 1999). Thus, front pay is intended to be temporary in nature. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987). Under Title VII, front pay is an alternative to the equitable remedy of reinstatement, and thus is within the discretion of the court. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 854 n.3 (2001). In contrast, under Washington law, the calculation of front pay is a jury issue, and a court may reduce a jury's damages award, but only with the plaintiff's consent. Wash. Rev. Code § 4.76.030; *Green v. McAllister*, 14 P.3d 795, 801 (Wash. App. Ct. 2000); *see also Passantino*, 212 F.3d at 510.

Dr. Tapia estimated Plaintiff's future lost earnings, assuming that Plaintiff could mitigate her damages by securing a new job as sales representative earning over $100,000 per year, plus benefits. Dr. Tapia estimates that from Plaintiff's termination in 2018 through the year 2035 (from approximately age 48 to age 63), the difference in Plaintiff's cumulative total earnings (both wages and benefits) would add up to $2,534,333. (Dkt. No. 168 at 72.) Subtracting the $390,500 in back pay, Dr. Tapia calculated that Plaintiff's front pay should be $2,143,722. (*Id.*)

The jury awarded Plaintiff the full amount of front pay requested. (Dkt. No. 158.) The award did not apportion damages between the federal and state law claims. (*Id.*)

Defendant requests that the Court remit the award to no more than three years of front pay, arguing that the jury award is grossly excessive. (Dkt. No. 178 at 11.) At trial, Defendant did not present an economic damages expert, and Defendant elected not to seriously dispute the amount of damages in its closing argument, arguing instead that the jury would not need to reach the issue of damages if they determined that Defendant was not liable (Dkt. No. 173 at 89–90.) The jury was left, therefore, with a stark choice between $0 and $2,143,722 in front pay.

Plaintiff is a talented sale representative and highly skilled professional. She agrees that she is capable of mitigating damages by securing employment and earning at least $100,000 per year. In this case, the Court finds that it is speculative to predict Plaintiff's career trajectory 15 years into the future and assume she would have remained at Biogen until retirement. *See Del Monte Dunes*, 95 F.3d at 1435. The Court further finds that in this case, an award of 15 years of front pay is grossly excessive. *See id*. Five years of front pay is the maximum award that would not be excessive in this case. Dr. Tapia calculates that Plaintiff's cumulative lost earnings through December 31, 2024 will be $1,119,640. Deducting the $390,500 in back pay from this number leaves an award of $729,140 in front pay.

Therefore, Defendant's motion for remittitur of the front pay award pursuant to Fed. R. Civ. P. 59(a) is GRANTED. The Court hereby REMITS the front pay award to $729,140 and DENIES Defendant's request for a new trial on damages, conditioned on Plaintiff's acceptance of the remittitur.

### 2. *Punitive Damages*

Punitive damages are available under Title VII to prevent and remediate unlawful conduct. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545–46 (1999). Punitive damages may be awarded in discrimination cases where the plaintiff shows that the employer knowingly or recklessly acted in violation of federal law. *Id.*; 42 U.S.C. § 1981a(b)(1). Thus, a plaintiff must

show that when the employer fired her, it acted "in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536. Even if the plaintiff makes this showing, the employer may nonetheless escape punitive damages if it can show that the challenged actions were not taken by senior managers and were contrary to the employer's good faith implementation of an effective antidiscrimination policy. *Id.* at 546.

The Court instructed the jury as follows:

> You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff. It is not necessary, in considering punitive damages, to determine that the defendant's conduct was egregious, just that the conduct was intentional.

> You may not award punitive damages if you find that the defendant's employees' decisions to discharge plaintiff were contrary to the defendant's good-faith efforts to comply with the law.

(Dkt. No. 149 at 30–31.) Thus, the jury was correctly instructed on both the threshold requirement for awarding punitive damages and on Defendant's good faith affirmative defense. . *See Kolstad*, 527 U.S. at 536, 545–46.

Defendant argues the Court should reduce the punitive damages award to zero for several reasons. (Dkt. No. 178 at 15–22.) First, Defendant argues that the issue of punitive damages should not have even reached the jury because there was no evidence of Defendant's malice or reckless indifference as to Plaintiff's sex discrimination and retaliation claims. But Plaintiff presented evidence that managers Palacio and Allison were aware of Plaintiff's report of sex discrimination. (Dkt. No. 186 at 85–87, 93–98.) Furthermore, Plaintiff presented Brown's message stating that she wished to avoid "exposing herself" in the termination. (*See* Dkt. No. 185 at 7.) Thus, there was a basis for the jury to find that Defendant acted in the face of a perceived

1   risk that it was violating federal law by firing Plaintiff in retaliation for reporting sex

2   discrimination. *See Kolstad*, 527 U.S. at 546. Furthermore, because Palacio was aware of

3   Plaintiff's complaint of sexism, there was also a basis for the jury to find that Defendant knew

4   Plaintiff was being terminated because of her sex.

5          Next, Defendant presses its argument that it has a good faith affirmative defense. (Dkt.

6   No. 178 at 18–22.) Specifically, Defendant argues that it made strenuous efforts to ensure its

7   employees do not discriminate or retaliate on the basis of sex. It touts its (1) non-discrimination

8   and non-harassment policy, (2) code of business conduct, (3) internal investigations protocol,

9   and (4) employee trainings. (*See id.*) But this argument simply repeats the good faith affirmative

10  defense that Defendant presented at trial, which the jury rejected. (*See* Dkt. Nos. 149 at 30–31;

11  154, 158.) Furthermore, the defense is not applicable if senior managers were aware of the

12  retaliatory action. *See Kolstad*, 527 U.S. at 546. As discussed above, there was sufficient

13  evidence presented at trial for the jury to conclude that Allison, Brown's supervisor, and Palacio,

14  were aware that Brown could have identified Plaintiff for termination because of Plaintiff's sex

15  or in retaliation for her report. Thus, Defendant has not established that the jury's award of

16  punitive damages was clearly unsupported by the evidence.

17         Defendant additionally argues that the jury was moved by passion or prejudice when it

18  awarded punitive damages, citing that the award was over three times what Plaintiff suggested in

19  closing arguments. (Dkt. No. 178 at 18.) The Court disagrees. Instead, the size of the award

20  suggests that the jury believed that a significant punitive damages award was necessary to deter

21  future wrongdoing. Finally, Defendant suggests that allowing both punitive and non-economic

22  damages amounts to a double "recovery" for Plaintiff, (Dkt. No. 178 at 22–23), but Defendant

23  confuses punitive damages with compensatory damages. *See* 42 U.S.C. § 1981a(b)(1).

24         Thus, Defendant has not established that the punitive damages award was grossly

25  excessive or unsupported by the evidence. *See Del Monte Dunes*, 95 F.3d at 1435. Therefore,

26  Defendant's request to remit the punitive damages award to zero (Dkt. No. 178) is DENIED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**D.      Plaintiff's Motion to Amend Punitive Damages Award**

The jury awarded Plaintiff $1,690,000 in punitive damages for her Title VII claims. (*See* Dkt. Nos. 154, 158.) Federal law caps punitive damages awards based on size of the employer. 42 U.S.C. § 1981a(b)(3)(D). Because Defendant employs 500 or more full-time employees, Plaintiff's maximum punitive damages award is $300,000. (*See id.*) Plaintiff requests that the court amend the punitive damages award to $300,000. (Dkt. No. 160 at 2.) The Court GRANTS Plaintiff's request to amend the judgment (Dkt. No. 160) and hereby AMENDS the judgment to reduce Plaintiff's punitive damages from $1,690,000 to $300,000.

**E.      Plaintiff's Motion for Double Back Pay Under the FCA and Prejudgment Interest**

The FCA provides that if a plaintiff succeeds on a retaliation claim, relief "shall include . . . 2 times back pay." 31 U.S.C. § 3730(h)(2). The jury found that Plaintiff is entitled to $395,000 in back pay. (*See* Dkt. No. 158.) Plaintiff asks that the Court double this in accordance with the statute. (Dkt. No. 160 at 2.) Defendant does not oppose this request. (*See* Dkt. No. 165.) Therefore, the Court hereby GRANTS Plaintiff's request and AMENDS the judgment to double Plaintiff's back pay award from $390,500 to $781,000.

The parties agree that Plaintiff is entitled to prejudgment interest on the back pay award. (Dkt. Nos. 185 at 22, 189 at 12.) But Defendant argues that doubling of the back pay under 31 U.S.C. § 3730(h)(2) constitutes an award of exemplary damages and that Plaintiff is only entitled to prejudgment interest on the actual back pay award. (Dkt. No. 189 at 12.) Other district courts have reached the same conclusion, and the Ninth Circuit has not addressed this question. *See, e.g., United States ex rel. Macias v. Pac. Health Corp.*, 2016 WL 8722639, at *11–12 (C.D. Cal. Oct. 7, 2016); *Miniex v. Houston Hous. Auth.*, 2019 WL 1675857, at *2 (S.D. Tex. Apr. 17, 2019); *Neal v. Honeywell, Inc.*, 995 F. Supp. 889, 896 (N.D. Ill. 1998), *aff'd*, 191 F.3d 827 (7th Cir. 1999). The Court is persuaded that Plaintiff is only entitled to prejudgment interest on her actual back pay award. Therefore, Plaintiff's request for interest on back pay is GRANTED in

1    part, to be calculated only on the award of $390,500 in actual back pay.

2        **F.    Plaintiff's Motion for Attorney Fees**

3        A district court employs a two-step process to calculate a reasonable fee award. *Fischer*

4    *v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates the lodestar

5    figure, which represents the number of hours reasonably expended on the litigation multiplied by

6    a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Second, the court

7    determines whether to increase or reduce that figure based on several factors that are not

8    subsumed in the lodestar calculation. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016);

9    *see also Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[1] The lodestar figure

10   is presumed reasonable. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.

11   2000).

12        1.   *Calculation of Hours*

13        The trial in this case lasted almost seven days. Plaintiff called 15 witnesses, and

14   Defendant called five additional witnesses. (Dkt. No. 160 at 3.) There were 80 exhibits admitted

15   into evidence. (*Id.*) There were 18 depositions, including six separate 30(b)(6) designees. (Dkt.

16   No. 161 at 13–14.) Plaintiff's counsel states that they spent 1,681 hours on this case, for a total of

17   $637,290. (Dkt. No. 161 at 25.) Additionally, Plaintiff requests an award of $30,192.50 in

18   attorney fees for 78.1 hours of work spent litigating these post-trial motions. (*See* Dkt. Nos. 174

19   at 7, 175 at 16, 185 at 22, 186 at 158–59.)

20   _____

21   [1] The factors set forth in *Kerr* to evaluate the reasonableness of requested fees are:

22        (1) the time and labor required, (2) the novelty and difficulty of the questions
          involved, (3) the skill requisite to perform the legal service properly, (4) the

23        preclusion of other employment by the attorney due to acceptance of the case, (5)
          the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations

24        imposed by the client or the circumstances, (8) the amount involved and the results
          obtained, (9) the experience, reputation, and ability of the attorneys, (10) the

25        "undesirability" of the case, (11) the nature and length of the professional
          relationship with the client, and (12) awards in similar cases.

26   526 F.2d at 70.

ORDER
C18-1029-JCC
PAGE - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

a.  Duplicated or wasted effort

Defendant requests three discounts for duplicated or wasted effort. (Dkt. Nos. 165 at 6–8, 166 at 6–14.) First, Defendant asks the Court to discount $52,202.50 in fees spent on legal conferences involving two or more attorneys. But collaboration is necessary to take a case to trial, and it is permissible to award attorney fees for legal conferences. *See Campbell v. Catholic Cmty. Servs. of W. Washington*, Case No. C10-1579-JCC, slip op. at 6 (W.D. Wash. 2012). The Court has reviewed the relevant entries and finds them reasonable. Second, Defendant asks to discount $13,095 in entries it flags as wasteful or unproductive time. But the flagged entries do not show evidence of wasted time. Third, Defendant requests a discount of $11,125 for work it characterizes as administrative. But the flagged entries almost all involve work that does not appear primarily administrative, is largely related to a mock trial, and was performed by paralegals at rates of $225 or less.

Plaintiff's counsel took this case on a contingency fee basis, and Plaintiff contends that this makes it unlikely that counsel wasted time. (Dkt. No. 160 at 5–6.) Plaintiff's counsel also declares that she took steps to exclude hours for excessive, redundant, or unnecessary work. (Dkt. No. 161 at 6–7, 18–19.) Moreover, the Court has reviewed Plaintiff's billing entries and declarations, and it appears that the case was leanly staffed and efficiently litigated. (*See* Dkt. No. 161-2.) Accordingly, Defendant's requests for a discount for duplicative or wasted effort are DENIED.

b.  Insufficient documentation

Defendant contends that there are $2,880 of vague entries. (Dkt. No. 165 at 8–9.) The Court has reviewed the entries and does not find them so vague that they must be stricken. Defendant also proposes striking all block-billing entries because there is no way to determine whether the time spent on each task was reasonable. (*Id.*) Defendant flags 348 hours for a total of $121,765. (*Id.*) Plaintiff has completely resolved this concern by submitting a supplemental declaration that itemizes the specific time for each task, explaining that the original report

ORDER
C18-1029-JCC
PAGE - 12

streamlined the time into block entries. (*See* Dkt. No. 175.) Therefore, the Court finds these hours reasonable and DENIES Defendant's requested discount for insufficient documentation.

### 2.   *Attorney Rates*

To determine a reasonable billing rate, the court generally looks to "the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The presumptive reasonable hourly rate for an attorney is the rate the attorney charges. *Broyles v. Thurston Cty.*, 195 P.3d 985, 1004 (Wash. Ct. App. 2008).

Defendant argues that some or all of Plaintiff's rates are too high and proposes a discount of $319,240. (*See* Dkt. No. 165 at 10.) Defendant contends that this was a "typical single plaintiff employment law case" with few experts and no novel issues of law. (*Id.*) Defendant argues that a typical firm will also write off and discount a portion of their bills. It also contends that basic tasks, such as reviewing pleadings, require less skill and should be billed at a lower rate. Defendant's declaration flags $101,730 of entries. (*See* Dkt. No. 166-1 at 20–21.)

Bloomfield's hourly rate is $500, Chase-Fazio's hourly rate is $325, and the other attorneys' rates are within this range or less. (Dkt. No. 161 at 25.) The paralegals' hourly rates are between $175 and $225. (*Id.*) According to past court awards and Plaintiff's expert declarations, an experienced plaintiff's lawyer practicing employment law in the Seattle area charges between $525 and $650 per hour. (*See* Dkt. Nos. 163, 164.) The rates for Plaintiff's lawyers and paralegals are well within market rates for the work performed. Therefore, Defendant's request for a discount of Plaintiff's counsel's hourly rates is DENIED.

### 3.   *Other Factors*

#### a.   Discount for unsuccessful disability claims

Where a plaintiff succeeds on only some of her claims, the court must consider (1) whether the unsuccessful claims were related to the claims on which she succeeded, and (2) whether the plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d

895, 901 (9th Cir. 1995). The key inquiry is whether Plaintiff's unsuccessful disability discrimination and retaliation claims are separable from the rest of the claims or whether Plaintiff would have put on essentially the same case. *See id.*

Defendant argues that the Court should discount Plaintiff's attorney fees award based on the time spent on her unsuccessful disability claims. (Dkt. No. 165 at 4–5.) Defendant points out that Plaintiff prevailed on her claims for sex discrimination and retaliation and FCA retaliation, while she did not prevail on her disability discrimination and retaliation claims. Defendant identifies $16,442.50 of time entries that were spent on the disability claims. (Dkt. No. 166-1 at 2–3.) In contrast, Plaintiff contends that her claims involved a common core of facts and that she prevailed on the central question of the case: whether Defendant wrongfully terminated her. (Dkt. No. 174 at 2.) In that view, Plaintiff's various claims simply constituted arguments in the alternative.

To some extent, the migraine incident formed the background of the deterioration of Plaintiff's relationship with Brown, but the events surrounding the disability claim were largely separate from those involving Plaintiff's other claims. And distinct issues surrounding Plaintiff's disability claims were litigated throughout her case, appearing in a motion for a protective order, motions for summary judgment, and testimony and argument at trial. Thus, because the claims are largely separable, Plaintiff is not entitled to attorney fees for time spent on those claims. *See Schwarz*, 73 F.3d at 901. Therefore, Defendant's request to discount for the unsuccessful disability claims is GRANTED. The Court hereby REDUCES the attorney fees by $16,442.55.

### b. Plaintiff's request for a 1.5 fee multiplier

Under Washington state law, a plaintiff may move for a multiplier of attorney fees based on either the contingent nature of success or the quality of the work performed. *Chuong Van Pham v. City of Seattle, Seattle City Light*, 151 P.3d 976, 983 (Wash. 2007). Plaintiff states that this case involved high risk because no serious settlement offer was made, she was forced to go to trial to recover, and because Defendant was represented by an elite law firm. But there is risk

every time a case goes to trial. As discussed above, Plaintiff counsel's hourly rates are generally in line with those of area trial lawyers. This tends to demonstrate that the attorney fees charged already account for this risk. Therefore, Plaintiff's request for a fee multiplier is DENIED.

The Court has considered the factors set forth in *Kerr*, with a particular emphasis on the skill required, the amount involved, the results obtained, and the experience, reputation, and ability of the attorneys, and concludes that the lodestar figure, minus the discount for the unsuccessful disability claims, represents a reasonable award of Plaintiff's attorney fees incurred. *See* 526 F.2d at 70. Therefore, Plaintiff's motion for attorney fees is GRANTED and Plaintiff is hereby AWARDED $651,040 in attorney fees.[2]

### G.    Plaintiff's Request for Costs

In addition to taxable costs, a prevailing party may recover non-taxable litigation costs under Title VII, the WLAD, and the FCA. *See* 42 U.S.C. § 2000e; 31 U.S.C. § 3730(h); Wash. Rev. Code §§ 49.48.030, 49.60.030. Plaintiff declares that her taxable and non-taxable litigation costs include fees, depositions, transcripts, witness fees, medical records, parking, travel, expert fees, meals, shipping, and same-day trial transcripts, among other items. (Dkt. No. 160 at 10.) Plaintiff has submitted declarations that her costs were $71,250.60 plus $2,764.13, for a total of $74,014.73. (Dkt. Nos. 161 at 20, 24; 161-3 at 2–8; 185 at 22, 186 at 159.) Defendant does not oppose Plaintiff's request for costs. (*See* Dkt. No. 165 at 14.) Therefore, Plaintiff's request for costs is GRANTED. The Court hereby AWARDS Plaintiff $74,014.73 in costs.

### H.    Plaintiff's Request for a Tax Gross Up

Title VII exists in large part "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1115 (9th Cir. 2017). Title VII permits a

---

[2] This figure reflects Plaintiff's lodestar figure of $637,290, minus a discount of $16,442.55 for the unsuccessful disability claims, plus $30,192.50 for the time spent litigating these post-trial motions.

court considerable discretion to ensure that a plaintiff receives full recovery. *See* 42 U.S.C. § 2000e-5(g)(1) (authorizing "any other equitable relief as the court deems appropriate"). The Ninth Circuit recognizes that awards of prejudgment interest and tax gross ups are appropriate in federal discrimination cases in order to secure "complete justice." *Clemens*, 874 F.3d at 1116–17. The decision whether to award a gross up is within the sound discretion of the court, and a plaintiff is not presumptively entitled to one. *Id.* (observing that "[t]here may be many cases where a gross up is not appropriate for a variety of reasons, such as the difficulty in determining the proper gross up or the negligibility of the amount at issue").

Plaintiff states that a tax gross up is necessary to put her in the same position as if she had earned these wages over time. Plaintiff submits Dr. Tapia's expert calculation of the necessary gross up. (Dkt. No. 162 at 12–13.) Defendant's only objection to the tax gross up is that the Court should first rule on Defendant's motion for judgment as a matter of law or for a new trial, and then "the Court will be able to make the appropriate tax calculation to prevent Plaintiff from receiving an unjust windfall." (Dkt. No. 178 at 13–14.)

Plaintiff requests a tax gross up of $561,656 for a portion of her damages award. The tax consequences of a lump sum award of this size appear steep, as demonstrated by Dr. Tapia. But Dr. Tapia calculates the gross up based on the sum of past economic damages ($390,500), future economic damages ($2,143,722), and FCA doubling of back pay ($390,500), which adds up to over $2.9 million. (Dkt. No. 160 at 11–12.)  FCA doubling of back pay is punitive, not compensatory, so it should be excluded from any tax gross up. And assuming Plaintiff accepts the remittitur, the amended past and future economic damages award is now $1,119,640. Thus, any potential tax gross up must be recalculated. Therefore, the Court GRANTS Plaintiff's request for a tax gross up and ORDERS Plaintiff to submit a new calculation of the gross up on only on the past economic damages, not the FCA doubling of back pay.

## III.    CONCLUSION

For the foregoing reasons, Defendant's renewed motion for judgment as a matter of law,

or, in the alterative, for a new trial or to amend the judgment (Dkt. No. 178) is GRANTED in part and DENIED in part as follows:

1.    Defendant's request for judgment as a matter of law is DENIED.

2.    Defendant's request for a new trial is DENIED.

3.    Defendant's request for remittitur of the front pay award pursuant to Fed. R. Civ. P. 59(a) is GRANTED. The Court hereby REMITS the front pay award to $729,140 and DENIES Defendant's motion for a new trial on damages, conditioned on Plaintiff's acceptance of the remittitur.

4.    Defendant's request for remittitur or a new trial on punitive damages is DENIED.

Plaintiff's motion to amend the judgment and for attorney fees, costs, prejudgment interest, and tax gross up (Dkt. No. 160) is GRANTED in part and DENIED in part as follows:

1.    Plaintiff's request to amend the punitive damages award is GRANTED, and the Court hereby AMENDS the judgment to reduce Plaintiff's punitive damages from $1,690,000 to $300,000.

2.    Plaintiff's request to amend the back pay award pursuant to 31 U.S.C. § 3730(h)(2) is GRANTED, and the Court hereby AMENDS the judgment to double Plaintiff's back pay award from $390,500 to $781,000.

3.    Plaintiff's request for interest on back pay is GRANTED in part, to be calculated only on the award of $390,500 in actual back pay.

4.    Plaintiff's request for attorney fees is GRANTED, and Plaintiff is hereby AWARDED $651,040 in attorney fees.

5.    Plaintiff's request for costs is GRANTED, and Plaintiff is hereby AWARDED $74,014.73 in costs.

6.    Plaintiff's request for a tax gross up is GRANTED.

7.    Plaintiff is ORDERED to submit new calculations of (1) the gross up necessary to offset the updated economic damages award, and (2) prejudgment interest on the

back pay award of $390,000.

DATED this 24th day of February 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE